HANDLAN, *Appellant*, v. McMANUS.

1. **Appellate Practice :** FINDING OF TRIAL COURT. In actions at law, the finding of facts by the trial judge are as binding upon the appellate court as are the finding of facts by a jury ; and it makes no difference that the evidence was heard before one judge and the trial had on a transcript thereof before another judge.

2. **The Evidence** in this case *held* to warrant the finding of the trial court that the defendant and her grantors had actual, open, continuous and exclusive possession of the land in suit for a period of ten years before the commencement of suit, by virtue of a claim of exclusive ownership.

3. **Limitations:** ADVERSE POSSESSION. Possession to be of any avail as a defense under the statute of limitations must be adverse and not subordinate to the true title. It cannot be adverse so long as it is held under a lease or license.

4. **Adverse Possession.** Where adjoining proprietors hold possession up to a given line, but without claiming or intending to claim beyond the true line, wherever that may turn out to be, the possession will not be adverse to the true owner. But where one takes and holds exclusive possession up to a wall or fence, claiming to be the owner, his possession will be adverse.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Cunningham & Eliot* for appellant.

(1) The possession which will put in operation the statute of limitations must be hostile in its inception, or, having been begun in consistency with rightful title, its character must have been changed. *Gordon v. Eans*, 97 Mo. 587; *Budd v. Collins*, 69 Mo. 129; *Zeller v. Eckert*, 4 How. 289; Tyler on Adverse Enjoyment [1 Ed.] p. 876. (2) The possession must have been exclusive, by which is meant occupancy to the exclusion of any acts of possession on the part of the rightful owner. A mixed possession is the possession of him who has title. *Railroad v. Maffitt*, 6 S. W. Rep. 600; *Brownville v. Cavazos*, 100 U. S. 138; 3 Washburn on Real Prop., p. 149; *Brimmer v. Prop'rs of Long Wharf*, 5 Pick. 131; *Congregation v. Greenwich*, 145 Mass. 112; Angell on Limitations, sec. 410. (3) The statute of limitations does not run unless a right of action exists in the person to be barred. *Campau v. Lafferty*, 50 Mich. 114; Tyler on Adverse Enjoyment, 859. (4) The purchaser of a lot of ground covered by a house which also extends over a part of an adjoining lot acquires from his grantor no benefit of adverse possession of any

land not included in his deed. *Green v. Devies*, 31 N. W. Rep, 914; *Lynde v. Williams*, 68 Mo. 360. (5) Possession of land under mistake as to the true boundary, without intention of claiming beyond the true line will not work a disseizin. *Tamm v. Kellogg*, 49 Mo. 118; *Houx v. Batteen*, 68 Mo. 84; *Wilson v. Lerche*, 90 Mo. 473; *Schad v. Sharp*, 95 Mo. 574. (6) A license or permission implies such incidental rights as may be necessary for its enjoyment. 1 Washburn on Real Prop., p. 661.

*D. D. Fassett* and *Sim T. Price* for respondent.

(1) Two ingredients are essential to constitute adverse possession: The *factum* possession and the hostile intention. Sedg. & W. T. L. T. [2 Ed.] sec. 729. Adverse possession is that kind of continued occupation and enjoyment of real estate which indicates an assertion of right on the part of the person maintaining it. *Rivers v. Thompson*, 43 Ala. 633. The character of adverse possession is given not by notice to persons interested, but by the nature of the acts done by the party. There must be a hostile intent, and that intent must be manifested by outward acts of an unequivocal kind. The open act of entry on land, with the declared intent to disseize, constitutes a disseizin without notice to the disseizee, or knowledge on his part of the entry and ouster. *Lodge v. Patterson*, 3 Watts, 74; *Bradley v. West*, 60 Mo. 41; *Moore v. Thompson*, 69 N. C. 120; *Davis v. Bomar*, 55 Miss. 671; *Key v. Jennings*, 66 Mo. 357. There are some acts so notorious in their character that they raise a conclusive presumption of notice to the owner of the adverse claim, such as the erection of buildings, etc. Tiedeman on Real Prop., sec. 697. (2) Continuous dominion, manifested by continuous acts of ownership, makes continuous possession. *Coleman v. Billings*, 89 Ill. 189. The possession of the landlord and his tenants is a continuous possession.

Sedg. & W. T. L. T., sec. 746; *Crispin v. Hannavan*, 50 Mo. 549. (3) It is sufficient to show an unequivocal claim of title adverse to the real owner. Tiedeman on Real Prop., sec. 699. And the fact that permanent and valuable improvements have been placed on the land in dispute is evidence to be considered as showing an intention to hold adversely to all. *Hamilton v. West*, 63 Mo. 93; *Waldrum v. Ballew*, 68 Mo. 164; *Cole v. Parker*, 70 Mo. 379. This is the general doctrine of the courts on this subject. Tyler on Adverse Poss., sec. 906. (4) A fence, building or other improvement is not essential to constitute an adverse possession. Acts of ownership, under a claim of right, visible, are sufficient to authorize the court to find such possession. *Leeper v. Baker*, 68 Mo. 400–407; Sedg. & W. T. L. T., sec. 732. The wrong-doer need not be in exclusive possession of the entire premises. His exclusive possession of a part, if he only claims title to that part, will work a disseizin as to that part as effectually as if the owner had been driven out of possession of the whole tract of land. Tiedeman on Real Prop., sec. 698. The statute of limitations begins to run from the date of ouster. Sedg. & W. T. L. T., sec. 730; *Robinson v. Lake*, 14 Iowa, 421–424.

BLACK, J.—This is an action of ejectment for a strip of land three or four inches wide, on the north line of Locust street, in the city of St. Louis, and extending north one hundred and four feet, to the width of five inches to an alley. The defense made and brought forward on the trial, by the instructions, is the statute of limitations.

On September 18, 1848, Henry Patterson, being the owner of fifty feet front, and extending back to the alley, conveyed the east half to Seth Ranlett, and on the same day he conveyed the west half to Charles Ranlett. The plaintiff derives title to the east half by

mesne conveyances from Seth Ranlett, and the defendant to the west half from Charles Ranlett. The strip of land in dispute lies on the west line of the plaintiff's lot and is included in his deeds, and belongs to him unless he and his grantors have lost it by adverse possession.

In 1852, one Rudolph was the owner of the west lot, and Seth Ranlett was still the owner of the east lot. Ranlett then had a brick house on his lot, extending back thirty-nine feet from the front line. Rudolph found just twenty-five feet of vacant land between Ranlett's west wall and a house west of his, Rudolph's lot, and he took possession and excavated this twenty-five feet, and built a house thereon, extending from front to the alley. Rudolph inserted the beams of his house in Ranlett's west wall, and raised it one story, for which use he paid Ranlett a money consideration. He also built a wall from the north end of the Ranlett wall to the alley, placing the outside thereof on a line with the west face of the Ranlett wall. Thus matters stood until 1885, when the defendant, having become the owner of the west lot by the will of her husband who acquired it in 1871, removed the old Rudolph house and built a new one on the exact same land, placing the beams of the new house in the Ranlett wall as before. Beneath this wall, thirty-nine feet, in length, and some five feet below the surface of the ground, was a footing course of stone a few inches thick, extending out from the wall so as to cover five or six inches. The defendant removed this projection when underpinning for her new house.

The case was tried before the court without a jury, and counsel for the plaintiff treat the case in this court as if we could make a finding of facts irrespective of the instructions given by the trial court. In this they are in error. It makes no difference whatever that the case was tried by the court without the aid of a jury. The finding of facts is as binding upon this court in the

one case as in the other, in an action at law like this. Nor does it make any difference that the evidence was heard before one judge and tried on a transcript thereof before another judge.

Under the instructions given the court must have found that defendant and her grantors had actual, open, continuous and exclusive possession of the strip of land in suit for a period of ten years before the commencement of this suit, and that the possession was not had or held under any license or permission from Seth Ranlett, but by virtue of a claim of exclusive ownership. And how could the finding have been otherwise? The disputed three or four inches, for a distance of thirty-nine feet from Locust street back, had been on the inside of the defendant's house and the house of her grantors since 1852 or 1853, and the sixty-five feet in length of the strip in the rear had been covered by the wall erected by Rudolph since the last-mentioned date. This wall was a standing monument of a claim of absolute ownership never questioned by any one until this suit was brought. The circumstance that a few inches of the footing course of stone-work under the foundation wall of the Ranlett house projected out so as to cover the strip in suit for a distance back of thirty-nine feet is overcome by the fact that Rudolph took possession up to the Ranlett wall, and built his wall in the rear up to an extension of a line drawn along the face of the Ranlett wall.

There is no doubt but possession, to be of any avail as a defense under the statute of limitations, must be adverse and not subordinate to the true title. The possession cannot be adverse so long as it is held under a lease or license, and it is an unquestioned fact that Rudolph acquired a right to rest the beams of his house in the west wall of Ranlett's house by license from the latter; but there is no direct evidence tending to show that this license related to or covered anything save the

use of the wall itself. The direct evidence of Rudolph, and the circumstances in evidence, all tend to show that the license embraced nothing but the use of the wall. Besides this, the court found it to be a fact that when Rudolph procured and paid for the right to join onto the wall he did not know that this footing course extended out beyond the main foundation wall. The footing course seems to have been beneath the surface of Rudolph's cellar. Certain it is, there is an abundance of evidence from which the court could, and did, find that the possession was adverse and hostile up to the wall of Ranlett's house at the surface of the ground, and that finding is conclusive and takes these few inches covered by the projecting footings.

Where adjoining proprietors hold possession up to a given line, but without claiming or intending to claim beyond the true line, wherever that may turn out to be, the possession will not be adverse to the true owner. But where one takes and holds exclusive possession up to a wall or fence, and claims to be the owner up to that wall or fence, his possession will be adverse. *Cole v. Parker*, 70 Mo. 379. That the claim of ownership of Rudolph and those claiming under him included the strip in suit admits of no doubt, and it was open and notorious.

With the findings made by the trial court as shown by the instructions given there is little to review in this case, and the judgment is affirmed. All concur.