WILSON, *Plaintiff in Error*, v. PURL.

### In Banc, March 17, 1896.

1. **Color of Title**: INVALID TAX DEED: ADVERSE POSSESSION. An invalid tax deed is sufficient to give color of title, and ten years' adverse possession under it will confer title by limitation.

2. **Practice**: APPLICATION FOR CONTINUANCE: STATEMENT OF FACTS: LEGAL CONCLUSIONS: ADMISSION OF APPLICATION IN LIEU OF TESTIMONY. An application for a continuance on the ground of the absence of a material witness must contain a statement of the facts' expected to be proved and not merely the legal conclusions to be drawn from such facts, and where it fails to so state the facts, it should not be considered as evidence, even though admitted without objection in lieu of the testimony of the witness. (BARCLAY and ROBINSON, JJ., dissenting.)

3. **Adverse Possession.** The occupation, without apparent authority from or the payment of rent to anyone, of two small houses on a tract of timber land belonging to a nonresident, by several persons at different times, no land being inclosed or used in connection with the buildings, did not constitute possession adverse to the owner, and will not be regarded as the possession of the holder of an unrecorded tax deed and can not be tacked to the possession of a subsequent grantee of the purchaser at the tax sale, in order to eke out the statutory period of limitation.

*Error to Morgan Circuit Court.*—HON. D. W. SHACKLE-FORD, Judge.

REVERSED AND REMANDED.

*A. L. Ross* for plaintiff in error.

(1) *First.* Plaintiff held the legal title to the lands described in the petition. The legal seizin and possession followed the title, and defendant must show that he, or those under whom he claims, have had open, notorious, and adverse possession under color of title for the statutory period. *Bradley v. West*, 60 Mo. 33;

*Lynde v. Williams,* 68 Mo. 360. *Second.* The title carries with it the seizin and there must be an actual ouster to divest it any length of time, or a constructive disseizin by an adverse possession under color of title. *Mylar v. Hughes,* 60 Mo. 105. *Third.* The owner of real 'estate may allow it to remain unoccupied for any number of years; yet his title draws possession with it till actual adverse possession begins. *Douthit v. Stinson,* 63 Mo. 268. (2) The tax deed admitted in evidence is void on its face. It recites that judgment was rendered · on the tenth of July, 1865. The statute at that time required such judgments to be rendered at a term beginning on the third Monday in July. Statutes, 1864, sec. 1, p. 84; General Statutes, 1865, chap. 13, sec. 87, p. 123; *Kinney v. Forsythe,* 96 Mo. 414; *Spurlock v. Dougherty,* 81 Mo. 171. The deed recites that notice of sale was given "according to law." Such notice is insufficient and renders the deed void. *Hubbard v. Gilpin,* 57 Mo. 441. (3) Said tax deed was improperly admitted in evidence. It is void on its face and conveys no title. It can not even serve defendant as color of title for the reason that it was never put of record; and there is no evidence that plaintiff had actual knowledge of its existence. *Crispin v. Hanavan,* 50 Mo. 536; *Turner v. Hall,* 60 Mo. 271; *Kinney v. Forsythe,* 96 Mo. 414; Tiedeman on Real Prop., sec. · 696; *Van Sickle v. Catlett,* 75 Tex. 404; *Hodges v. Eddy,* 38 Vt. 345; 3 Wash. Real Prop. [5 Ed.], pp. 164, 165. The statement read in evidence as the testimony of Lydia Stephens does not show continuous possession. The evidence is wholly insufficient to prove that Lydia Stephens was ever a tenant of Clark and Brown; but if she was such tenant she was not in possession for some time prior to defendant's entry into possession. There being manifestly a break in the continuity of the alleged adverse possession, the instruction directing

a finding for plaintiff should have been given, and the finding made accordingly. *Lynde v. Williams*, 68 Mo. 360; *Hunt v. Railroad*, 75 Mo. 252; *Bledsoe v. Sims*, 53 Mo. 305; *Key v. Jennings*, 66 Mo. 356; *Alexander v. Campbell*, 74 Mo. 142; *Spurlock v. Dougherty*, 81 Mo. 171.     (5) Defendant will not be allowed to hold that portion of the land outside of the boundaries of his alleged color of title. *Cooper v. Ord*, 60 Mo. 420; *Comstock v. Eastwood*, 108 Mo. 41; *Keen v. Schnedler*, 15 Mo. App. 389; s. c., 92 Mo. 516.     (6) Defendant's possession in sections 13 and 24 can not be linked to Mrs. Stephens' possession in section 14. *Lynde v. Williams*, 68 Mo. 360.     (7) *First.* Defendant took possession of a part of sections 13 and 24, sued for by plaintiff, without color of title or assertion of ownership thereto. This was a mere trespass. Besides, there is no evidence that defendant, or those under whom he claims, had been in possession of any part of said sections for ten years. *Mylar v. Hughes*, 60 Mo. 105; *Leeper v. Baker*, 68 Mo. 400. *Second.* Defendant failed to show the limits of his possession. *Hughes v. Israel*, 73 Mo. 538.     (8) Nonpayment of taxes by defendant and payment of same by plaintiff is competent to show that the former's possession was not under claim of ownership. *Allen v. Mansfield*, 108 Mo. 343.

*D. E. Wray* for defendant in error.

DIVISION ONE.

BRACE, P. J.—This is an action in ejectment to recover the possession of the west half of the southwest quarter of section 13, the east half of the southeast quarter of section 14, and the west half of the northwest quarter of section 24, township 41, range 17, in Morgan county. The petition is in common form; the

answer a general denial. The case was tried by the court without a jury. Judgment for the defendant, and plaintiff brings the case here by writ of error.

Plaintiff acquired title to the premises by patents from the United States government, dated November 1, 1859. In 1867 the east half of the southeast quarter of section 14, was sold for the taxes of the years 1860 and 1866; and C. C. Brown and George P. Clark became the purchasers thereof and thereafter received a deed therefor from the collector of said county dated April 24, 1869. On the fourth day of October, 1881, the said Brown and Clark, by quitclaim deed of that date, conveyed the said east half of the southeast quarter of section 14 to the defendant, who, a short time thereafter, went into possession of a part thereof, claiming under said deed. On the first day of January, 1890, this suit was instituted.

At that time the defendant was living in a house erected by him in the northeast corner of the southwest quarter of section 13, and had about fifteen or twenty acres cleared up, under fence, and in cultivation, partly in the west half of the southwest quarter of section 13, and partly in the east half of the southeast quarter of section 14, and about two acres in the west half of section 24. This suit was brought within ten years after the defendant went into the possession of the land he thus occupied.

There was no evidence that any person, before the defendant, was ever in actual possession of the west half of the northwest quarter of section 24, and to it the defendant had no color of title, and there can be no question that the plaintiff as to that tract ought to have recovered.

The defendant had no color of title whatever to the west half of the southwest quarter of section 13 and as to all that part of that tract not in the actual occupa-

tion of the defendant, there can be no question that the plaintiff ought to have recovered.

While the tax deed read in evidence was invalid and did not convey the title of the plaintiff to the east half of the southeast quarter of section 14, it was sufficient to give color of title to those claiming under it, and if the defendant had been in possession of that part of that tract which he actually occupied, claiming the whole of it under said deed, in connection with his occupancy of the few acres in section 13 on which his house was built, for a period of ten years before this suit was brought, he could have successfully defended against plaintiff's action as to the whole of the east half of the southeast quarter of section 14, and as to so much of the land in section 13 as was actually occupied by him. But his own possession of these premises did not extend to the statutory period, and he must have failed also as to this part of the land, unless his possession was connected with some prior possession. An effort was, therefore, made to show some such possession, to which his possession could be tacked.

The defendant in error has filed no brief in this cause, and we are not advised upon what particular evidence reliance is placed to support the judgment. We find, however, in the bill of exceptions this statement: "Counsel for defendant then read in evidence the following statement set forth in his application for a continuance:

"It is admitted that Mrs. Lydia Stephens, if present, would testify to the following state of facts: That he expects to prove by said witness that she, as a tenant of defendant's grantees, went into the possession of the lands sued for more than ten years next before the bringing of this suit. And he expects to prove by said absent witness that the defendant and those under whom he claims have been in the open, notorious,

adverse, uninterrupted possession of the lands sued for, for more than ten years next before the bringing of this suit, and during all of said time the defendant and those under whom he claims have during all of said time claimed title to said land, that said witness resides in this, Morgan, county.''

Whether this statement be construed to mean that it was admitted that if the said Lydia was present she would testify *that defendant expected* to prove by her the string of legal conclusions therein contained, or that she herself would testify to such conclusions, it is equally worthless as evidence, containing no statement of facts to be proven by her, from which such conclusions might be drawn. The facts which the legal evidence in the case tended to prove were that the plaintiff was the owner of a body of land of four hundred and eighty acres in these sections, including that in controversy, that it was timber land, that he was a nonresident, that he kept the taxes on his land regularly paid up except, perhaps, for those years for which it was sold as aforesaid. That prior to such sale there was on these lands two small cabins, but where located on said lands does not clearly appear. It does not appear that any land was inclosed or used in connection with these cabins or by whom they were built, but they were occupied from time to time by different persons; whether in succession or at intervals, whether with or without the consent of the owner does not appear. They were probably mere trespassers.

The evidence tends to prove that there was a family or maybe two families living in these cabins at the time Brown and Clark received their tax deed, and that these, or one of them, continued to live there afterward; whether continuously or up to what time does not appear. Whoever they were, and however long they or any of them remained there, they stayed

just as they or those before them had stayed, before the tax sale was made and the tax deed executed. There is no evidence that any one of them ever paid a cent of rent, attorned to or in any way became tenants of Brown and Clark, except in the mind's eye of Clark, who testified in this case, and speaks of them as their tenants.

The fact is, however (as his evidence plainly shows), that Brown and Clark never exercised any acts of ownership over the land after their purchase at tax sale, paid no taxes thereon, and did not even put their deed upon record. And when the defendant took possession under that deed, there was no land cleared up or inclosed; one of the cabins had been torn down and moved away or destroyed, and the other without roof or floor was abandoned and unoccupied. How long the premises had remained in this condition does not appear. But evidently there had never been, prior to defendant's taking possession, an adverse possession by any person that could have defeated the plaintiff's title, nor any possession of any kind with which the defendant's possession was connected, or to which it could be tacked, to eke out the statutory period, for that possession.

The judgment should have been for the plaintiff for the land sued for instead of for the defendant, and the same ought to be reversed, and the cause remanded for new trial. MACFARLANE, J., concurs; BARCLAY and ROBINSON, JJ., dissent, and the case is transferred to court *in banc*.

### IN BANC.

PER CURIAM—The foregoing opinion handed down in division number one is adopted as the opinion of the court *in banc*. GANTT, SHERWOOD, MACFARLANE, and

BURGESS, JJ., concurring with BRACE, C. J., therein. BARCLAY and ROBINSON, JJ., dissenting. The judgment of the circuit court is therefore reversed and the cause remanded for new trial.

SHERWOOD, J. (*concurring*).—I concur also in the above opinion for the additional reason that I regard section 2127, Revised Statutes, 1889, which provides that, if "the court shall find the affidavit sufficient, the cause shall be continued, unless the opposite party will admit that the witness, if present, *would swear* to the facts set out in said affidavit" and on which section the application for a continuance herein was based, and which application was read in evidence, as clearly unconstitutional, and this upon analogous grounds to those where we held section 1886, Revised Statutes, 1879, unconstitutional. *State v. Berkley*, 92 Mo. 41, and subsequent cases.

Section 30 of our bill of rights declares, "that no person shall be deprived of life, liberty, or property without due process of law." In this short but momentous sentence are grouped together a *trinity of rights*. Those rights constitute the triune sum total of all that governments were organized among men to secure and protect. Each one of those rights so far as constitutional protection is concerned, is equally as sacred the other. If we can not be deprived of life and liberty without "due process of law," no more can we be deprived of "*property*" without the like process.

Lord Coke said that a trial "according to the law of the land," meant and included the right of the accused to *have witnesses sworn for him*. And the "law of the land" and "due process of law" are equivalent terms. The legislature undoubtedly has a great deal of power, but it does not possess the power to make

such *statutory hearsay* as is provided for in section 2127, *evidence*.

We have wiped out section 1886, Revised Statutes, 1879, and I think we should also wipe out section 2127, *surpa,* which constitutes part and parcel of the same vicious legislation, and was enacted at the same legislative session.

Under the old statutes (sections 8 and 9, R. S. 1855, p. 1260; Gen. Stat. 1865, p. 673) if the adverse party *admitted the truth* of the facts disclosed in the affidavit, and agreed that they be received in evidence, then the continuance might be denied; but there was an absolute admission of the *truth* of the facts as stated, while under the present *regime* all that a party who applies for a continuance can obtain is an admission *not* of the truth of the statement, but that the absent witness if present would *swear the way that the affiant swears he would swear,* which is a long shot different from an absolute admission of *truth* of a given statement.

The legislature undoubtedly can authorize the taking of depositions in civil cases to be used conditionally, and doubtless may authorize a continuance to be denied upon an admission being made of the nature provided for in the statutes of 1855 and 1865, *supra;* but beyond this, I do not believe the legislature has the power to go. In brief, a party to a civil cause has a constitutional right to have his witness *sworn for him* either when personally present as a witness, or when his deposition is taken, or an admission from his adversary *equivalent thereto,* and that nothing short of this will answer the demands of the constitution. Beyond this the legislature may not go; since it does not possess *creative* power and, therefore, can not make *something out of nothing,* nor compel a party to accept such a

beggarly makeshift as section 2127 offers as a substitute for the real testimony of a witness.

Besides, under section 2127, the "opposite party may disprove the facts disclosed, or prove any contradictory statements made by such absent witness," and this without laying any foundation therefor, thus overturning one of the very fundamentals of the law of evidence and diminishing the feeble force of the *quasi* admissions made by the same party. *People v. Vermilyea*, 7 Cow. 369.

If these views are correct, then the application for a continuance herein constituted no evidence at all of anything therein stated; was worthless, and when this is the case, no grounds of objection thereto need be stated. *State v. Meyers*, 99 Mo. *loc. cit.* 120, and other cases. BURGESS, J., concurs in these views.

BARCLAY, J. (*dissenting*).—We do not concur in the judgment of reversal.

The plaintiff's case rests upon two patents from the United States government which were not recorded until July 8, 1889.

Plaintiff also offered testimony showing that defendant's house was in the northeast corner of the southwest quarter of section 13; that part of the land in suit in sections 13, 14, and 24 defendant had cleared, fenced and cultivated; but the improvements in section 24 covered only about an acre and a half or two acres. Parts of two of defendant's fields were in section 14.

The defense relied upon adverse possession only.

Defendant put in evidence a sheriff's tax deed to Messrs. Clark and Brown for part of the land in controversy, namely: the east half of the southeast quarter of section 14. The deed also purported to convey the southwest quarter of the southeast quarter of that sec-

tion, but that "forty" is not in dispute in this case.
The tax deed was dated, April 24, 1869.

Plaintiff unsuccessfully objected to the tax deed as
void on its face, and because it had not been recorded.

Defendant then introduced a quitclaim deed to
himself from the grantees in the tax deed. It was of
date, October 4, 1881; recorded August 30, 1889. It
contained the same description as the tax deed. Plain-
tiff objected to this deed on the ground that it was no
notice of adverse possession until recorded. The court
admitted the document over the objection.

Defendant testified that "he bought the land in
controversy in 1881; that he went on it shortly after-
wards; that Mrs. Stephens had lived on the land for
about eight years before he moved on it; that he bought
it from Clark and Brown; that Brown pointed out the
lines and Clark showed him the corners; that his im-
provements were inside of the lines Brown showed him;
that he claimed the land under the quitclaim deed from
Clark and Brown."

On cross-examination defendant stated that at the
time he bought the land there was on it a little, old,
rough, log cabin, about twelve by fourteen feet in size,
with no roof and no floor; that there had formerly been
two houses on the land, but the old one had been torn
down and moved away, before he took possession; and
that he did not know where Mrs. Stephens was living
at that time.

Defendant admitted that he had never paid taxes
on the land.

The following is an exact copy of a passage from
plaintiff's abstract in this court:

"It was admitted that Mrs. Lydia Stephens, if
present, would testify on behalf of defendant as follows:
That she, as a tenant of defendant's grantors, went
into the possession of the lands sued for, more than ten

years next before the bringing of this suit; that the defendant and those under whom he claims have been in open, notorious, adverse, uninterrupted possession of the land sued for, more than ten years next before the bringing of this suit. And that during said time the defendant and those under whom he claims have; during all of said time, claimed title to said land."

(We have copied from the plaintiff's abstract in this court, because that copy shows the view taken now by plaintiff's counsel as to the effect of Mrs. Stephens' statement as part of the evidence in the case.)

No objection whatever was made by plaintiff to this statement of Mrs. Stephens when offered.

Defendant put in considerable corroborative evidence as to his own acts of ownership.

In rebuttal, plaintiff recalled the county surveyor who testified that defendant's house was in section 13, and that there was a site of an old house in section 14.

On that side, other evidence was given to contradict defendant's claim of adverse possession, including testimony that plaintiff was a nonresident of Missouri and that the taxes had been paid for him every year since 1869 by a local agent, who never knew of anyone being on the land until a survey of the lands, in 1890.

This action was begun January 2, 1890, as appears by the record in this court.

At the close of the evidence the court gave the following declarations of law at the instance of plaintiff, viz:

"A. The court declares the law to be that the possession of real estate follows the title and is presumed to be in the true owner, and to sustain the claim of title by adverse possession on the part of the defendant, the following propositions or facts must be clearly proven by defendant:

"1st.   The defendant must have entered into the possession in good faith believing he had a valid title to the land.

"2d.   The possession so taken must have continued without break or interruption for ten consecutive years before the commencement of this suit.

"3d.   The owner must have had actual notice of such possession ten years prior to the bringing of this suit, or constructive notice by occupation and substantial evidence of claim of title ten years prior to the bringing of this suit."

"B.   The court declares the law to be that before the defendant can defeat plaintiff's action on the ground of adverse possession he must prove to the satisfaction of the court:

"1st.   That he entered into possession in good faith, believing he had a good title to the land.

"2d.   That he made such entry under claim and color of title.

"3d.   That the possession so taken was continuous, without interruption or break in the same, open, public and notorious, for and during ten consecutive years, immediately before this suit was brought."

The court then refused to give the following proposed declarations, on the refusal of which error is assigned here, viz:

As a close to declaration of law marked "A":

"4th.   That in this case ten years prior to the commencement of this suit there was not such visible indicia of possession and claim of title as would give constructive notice to plaintiff."

"5th.   Plaintiff being a nonresident of this state during the whole period of defendant's alleged occupation of said premises, there can be no constructive notice given him of defendant's occupation."

"6th. The plaintiff must have had notice ten years prior to the bringing of this suit of defendant's color of title or paper under which he claimed, otherwise defendant's occupation of said premises was to him simply a trespass."

"7th. That if the paper or color of title under which defendant claims is such as to impart notice when recorded in the proper office, the plaintiff has ten years after the recording of such color of title within which to bring his suit—in the absence of actual knowledge of the deed or paper claimed to be color of title; that in this case there is no proof of actual knowledge, and the defendant claims under no deed or other instrument recorded ten years prior to the commencement of this suit."

As a close to declaration of law marked "B":—

"4th. That the owner (the plaintiff herein) must have had actual notice of the possession ten years prior to the bringing of this suit, or that ten years before the commencement of this suit the occupation and improvements upon the land were such as to impart notice to plaintiff that the occupant was not simply a squatter or trespasser, but a claimant of title to the land; and in this case the evidence is not sufficient to so impart notice."

"5th. That the plaintiff having been a nonresident of the state of Missouri for more than ten years prior to this suit, and the possession following his title, there can be no constructive notice to him of the adverse possession by defendant; and, as there was no actual notice, the plaintiff is entitled to recover."

"6th. To establish the defense of adverse possession under claim and color of title, it must appear by the evidence that plaintiff had actual and constructive notice of the deed or paper under which the defendant claimed, ten years prior to the bringing of this

suit—that there is no evidence of actual notice; and quitclaim deed to defendant read in evidence, not having been recorded ten years prior to the bringing of this suit, was not constructive notice to plaintiff; and the adverse possession taken under it is no bar to plaintiff's recovery."

Defendant asked no declarations of law.

After the court found for defendant, plaintiff moved for a new trial without avail, saved exceptions and took a writ of error.

1. Plaintiff complains that the tax deed was improperly admitted in evidence.

As defendant based his right to possession, in part, upon a quitclaim from the grantees in the tax deed, it was proper to admit that deed as color of title, irrespective of its merits or value otherwise. Conceding plaintiff's contention that the deed was void on its face, it might yet constitute color of title, in such circumstances as here appear. That is a proposition too firmly established by judicial decisions in this state to admit of question at this day. *Cook v. Farrah* (1891) 105 Mo. 492; *Allen v. Mansfield* (1891) 108 Mo. 343.

The deed was admissible as color, at least.

2. It is objected that "the statement read in evidence as the testimony of Lidia Stevens does not show continuous possession," to quote the exact words of plaintiff's brief on that point.

The statement received at the trial as a substitute for her testimony declares "that the defendant and those under whom he claims have been in the open, notorious, adverse, uninterrupted possession of the land sued for, more than ten years next before the bringing of this suit," etc.

The word "uninterrupted," in that statement [as applied to the subject in hand] we regard as equivalent to "continuous," which plaintiff deems essential.

Her statement, as already quoted in full, we consider was of itself evidence to prove the defense of adverse possession for the statutory period and to support the trial court's finding in favor of that defense. It is true that her statement is short, and is expressed in terms which have a settled legal meaning in such cases.    But it was given in evidence without objection and should be now considered (as both parties evidently considered it at the trial) as proof tending to make out the defense.    If it was either irrelevant or incompetent for that purpose, objection should have been interposed at the time.

No such objection is made by plaintiff's counsel even now.    The only objection to it in plaintiff's brief is that the statement is insufficient in failing to show that the adverse possession was "continuous."    To that objection it is enough to answer that the word "uninterrupted" is fully equivalent to "continuous," in the connection in which it is here used.

It may be true that "possession" is, in some respects and sometimes, a mixed question of law and fact.    In cases of contest concerning it, the actual facts are usually the proper matters to draw forth for the information of the trier of facts.    But in common parlance, "possession" is a word often used as a substitute for "occupancy."    In trials such as this, it is ordinary practice to ask direct questions about "possession" as so understood.

In this very case one of the first questions asked by plaintiff's counsel of his first witness, the county surveyor (called to testify as to the extent of defendant's possession) was this:

"Whom did you find in possession of that part of the land?"

And all through the case, plaintiff's counsel occa-

sionally asked direct questions about the "possession" of the land or of different parts of it.

It is evident that the statement of testimony of the absent witness, Mrs. Stephens, was drawn by counsel in accordance with the popular understanding above mentioned, as to the meaning of "possession." We think, with all due respect, that it would not be correct to wholly discard that statement as evidence. It should be taken for what it is worth, as tending to prove the facts it recites, as it was evidently so taken by all parties in the trial court.

While this court may properly go outside the briefs of counsel to discover grounds on which to sustain a judgment (in deference to the established rule that a circuit ruling should be affirmed, if right, even though induced by erroneous reasons), it seems nevertheless out of harmony with the spirit of our code of appellate practice (as applied to cases of this kind) to unearth in this court points of objection to any circuit ruling on evidence which was not the subject of an exception in the trial court, and which the judge there had no opportunity to consider or to correct.

Rulings on evidence are matters of exception only. To reverse a judgment in this court on account of such a ruling, unexcepted to at the time, appears to me to nullify the statute which declares that "no exceptions shall be taken in an appeal or writ of error to any proceedings in the circuit court, except such as shall have been expressly decided by such court." R. S. 1889, sec. 2302.

The statement of Mrs. Stephens was admitted without objection, in lieu of her testimony, probably under section 2127, or by some undisclosed agreement of counsel. In either event, the statement should be accepted by this court as evidence tending to prove the ultimate and essential facts which it recites.

If no one objected to its admissibility at the trial, an objection to it now is much too late to be tenable.

3.   Plaintiff insists that defendant can not claim in this action rightful possession beyond the limits of the land described in the tax deed, on which he relies as color of title.

His claim of the land mentioned in the deed would not defeat his right to hold the adjacent land (to which he had no colorable title) if he, and those under whom he holds, had had actual possession of said adjacent land, claiming title thereto for the period of limitation. The fact that the actual possession (on which defendant relies) went beyond the color of title, would not defeat his right to hold the excess by virtue of adverse possession of the proper character, sufficiently long continued.   *Handlan v. McManus*   (1890)  100  Mo. 124 (13 S. W. Rep. 207).

It appeared from the testimony of the surveyor that defendant's house stood in section 13, and that he had an acre or two in cultivation in section 24, besides parts of section 14, which he had cleared and fenced.

The extent of defendant's possession was one of the material questions in the case.  He testified that his improvements were within the lines that Brown (one of the grantees in the tax deed) of whom defendant bought the claim, showed him; and that he went upon the land shortly after buying it in 1881.

Clark (also one of the grantees in the tax deed) testified that Mr. McGinnis and his mother-in-law occupied the place prior to defendant's going there. He declares they were his tenants, "living there by our permission," as he says, although they paid no rent. Connecting this evidence with the statement of Mrs. Stephens (as to her tenancy under the grantors of defendant), and there is abundant support to the trial judge's finding against plaintiff (on the issue of adverse

possession) beyond the limits of defendant's color of title created by the tax deed.

4.   Plaintiff complains that his request for a finding in his favor should have been given.   He alludes to the eighth request for a declaration of law, already quoted.   That refers to all the land in suit.   Yet it is plain that whatever view be taken of the evidence as to the land not included in the tax deed, there is clearly sufficient testimony to support the judgment for defendant as to the land in section 14.   Plaintiff asked no declaration of law (or other ruling) separating that land from the rest in suit, or calling for a recovery of that part of the land to which defendant's color of title did not extend.

We think there was no error in refusing the plaintiff's eighth request.

The instructions given on his behalf were certainly very stalwart statements of the law in his favor.

5.   It is insisted that the extent of defendant's actual possession is not sufficiently shown to sustain the verdict, as to the land in excess of that described in the tax deed.   As to that contention we refer to the testimony already commented upon, and hold that it is sufficient to sustain the judgment.

The trial judge heard a number of witnesses on the alleged adverse possession of defendant, and the amount of credit due to each of them was a matter which he could better determine than ourselves.   We discern no error of law in his rulings, and he is the final authority on the weight of the testimony in an action at law such as this.

No complaint is made of any ruling on particular declarations of law, except as to the refusal of the eighth, which if given would determine adversely defendant's claim of title, as to all the land in contro-

versy. That request certainly was properly refused. Several given at the instance of plaintiff assumed (and we think correctly) that there was evidence before the court tending to prove defendant's title by adverse possession to all the land in suit.

In our opinion the judgment should be affirmed, and we dissent from the decision of our learned brethren reversing it. Judge ROBINSON joins in this dissent.