No. 96.—JOHN F. LAWSON, adm'r of JOHN MARTIN, and ELIAS H. TILLINGHAST, adm'r of ROBERT CUNNINGHAM, deceased, plaintiffs in error, vs. ROBERT CUNNINGHAM, adm'r of JAMES CUNNINGHAM, deceased, defendant in error.

[1.] A possession, that in its commencement, is not adverse, becomes adverse, only when the holder, changing his mind, *intends* it to become adverse, and *knowledge* of such, his change of mind, comes to the true owner.

[2.] To a bill praying relief against two parties as fraudulent confederates, one of whom resides in a different county from that in which the bill is filed, the latter cannot object that he is not sued in the county in which he resides.

In Equity, in Bibb Superior Court. Decision by Judge ALLEN, November, 1856.

This bill was filed by Robert Cunningham, administrator *de bonis non*, of James Cunningham, deceased, against John F. Lawson, administrator of John Martin deceased, and Elias H. Tillinghast, administrator of Robert Cunningham, deceased. The bill charges, that on the 27th day of April, 1811, James Cunningham, of the county of Jones, in said State, by deed, conveyed a *usufruct* interest in certain slaves, to his nephew, Robert Cunningham, to take effect and be enjoyed from and after the death of the said James, until the 25th day of December, 1829.

The following is a copy of said deed, to-wit:

GEORGIA, JONES COUNTY: *Know all men by these presents*, that I, James Cunningham, of the County and State aforesaid, am held and firmly bound unto Robert Cunningham, of said State and County, him, his heirs, executors and administrators, in the penal sum of *Five Thousand Dollars*, which payment, well and truly to be made and done, I bind myself, my heirs, executors and administrators, firmly by these presents; In witness whereof, I hereunto set my hand and seal, this 27th day of April, 1811.

*Whereas,* I did promise the said Robert Cunningham, the service in labor of certain negroes, now in my possession, and their increase or profits arising from their labor, for a certain given time to come, that is to say, immediately from and after my decease, until the twenty-fifth day of December, 1829, as part of compensation for removing to this county, and living with me and taking care of my effects, in addition to other considerations which I have made, and have given him assurances, for the negroes above mentioned, to-wit: Sam, George, and Mariah, Sam's wife, and Luce their child, and their increase.

Now the condition of the above obligation is such, that if the above bounden James Cunningham, doth cause the above Robert Cunningham, his heirs, executors, administrators or assigns, to peaceably have and hold the use and labor of said negroes above mentioned, and their increase, from the expiration of the time above mentioned, then the above obligation to be void, otherwise to remain in full force and virtue in law.                JAMES CUNNINGHAM, [L. S.]

The bill further alleges that James Cunningham died in the year 1811, and Robert took possession of said slaves under the aforesaid deed, and held the same until the year 1829, when, becoming embarrassed, said slaves were sold under executions against him, by the Sheriff of Jones County, and purchased by John Martin, Lawson's intestate, for a very inconsiderable sum—one hundred dollars or thereabouts;—and before the 25th December, 1829, at which time James Cunningham's interest or estate in the slaves ceased and terminated, Martin ran the slaves and their increase, and removed them out of the State and sold them, or otherwise fraudulently converted them to his own use. That said slaves have very much increased in number, and are worth some twenty or thirty thousand dollars. After the 25th of December, 1829, the said Robert Cunningham, being one of the heirs at law of said James, took out letters of administration upon his

estate, and instituted suit in the County of Jones, against Martin for the recovery of said negroes; said suit was afterwards fraudulently and corruptly compromised and settled between the parties, in the following way:—said Robert Cunningham was poor, having little if anything belonging to himself, or to the estate with which to carry on the suit, and Martin was wealthy; and Martin recognizing and admitting that the title of said negroes was of right in the estate of James Cunningham, and that his heirs and distributees were entitled to the same, and that said Robert Cunningham would recover the same as administrator, proposed to Cunningham that he should dismiss the suit, and that he Martin, would pay him some small some of money, equal to his, Cunningham's interest in the negroes, as one of the distributees of said estate, such interest being one seventy-second part of said negroes; and that he Martin, would purchase in all the interests of the other distributees, and thus save the administrator harmless from loss, for his default in not administering the same, and that said Cunningham should not further seek to recover the same; and he Martin, and Cunningham combining to defraud the creditors and distributees of the estate, entered into said agreement, and that, thereupon, and without any further consideration, said suit was dismissed.

The bill says that neither the complainant nor the heirs of James Cunningham knew of the arrangement made by Martin and Robert Cunningham. John Martin died in the year 1843 or 1844, in the county of Bibb, and defendant Lawson is administrator *de bonis non*, of his estate; said Robert Cunningham died in 1851 or 1852, without ever having been dismissed from his administration,—and Elias H. Tillinghast is his administrator. Complainant is the administrator *de bonis non*, of said James Cunningham, and the bill prays for an account of the said negroes, their hire and increase against said Lawson and Tillinghast, administrators as aforesaid, and that they be decreed to pay either the full value of said

negroes and increase, and hire thereon, since the first day of January, 1830, or if that cannot be ascertained, that they pay the value of said negroes as found in 1830, with interest thereon, compounded annually.

The defendant, Lawson, *demurred* to the bill on various grounds:

1st. For want of equity.

2d. The statute of limitation, and lapse of time.

3d. Misjoinder of parties defendants, by which said Lawson is sued out of the county of his residence.

4th. That there is adequate remedy at law, upon the bond of Robert Cunningham, administrator of James Cunningham.

5th. That the bill is multifarious.

After hearing argument, the Court overruled the demurrer, and ordered defendant to answer.

To which decision defendant excepted and assigns error thereon.

Ed. D. Tracy, and Alex. McKenzie, for plaintiffs in error.

Stubbs, Hill, and Tracy, for defendants in error.

*By the Court.*—Benning, J. delivering the opinion.

The Court below overruled the demurrer. The question is, were any of the grounds of the demurrer good?

The main ground of the demurrer was that relying on the statute of limitations. Was this a good ground?

The statute of limitations does not run in favor of one whose possession or claim is not adverse to that of the true owner. One whose possession is accompanied by the knowledge, and the admission that the title is in another; and also

by a promise founded on a valuable consideration, to buy out that title, does not hold adversely to the owner of that title.  This must be indisputable.

And such a possession was that of Martin.

The bill says, that he first sold the negroes, or otherwise converted them to his own use; that afterwards he was sued for them by Robert Cunningham, the administrator of James Cunningham, that Martin *recognizing and admitting* that the title to the negroes was in the estate of James Cunningham, and that his heirs and distributees were entitled to the negroes, and that Robert Cunningham, the administrator of James Cunningham, would recover them, made this proposition to the said Robert, viz:   That the said Robert should dismiss his suit on being paid a sum of money equal to his interest, as a distributee, in the negroes, and on receiving the promise of him, Martin, (a promise then given), that he, Martin, would buy out the interest of all the other distributees in the negroes—and thus save him, Robert, from any loss for the maladministration.

Robert accepted this proposition, received the money, and dismissed the suit, and Martin held on to the negroes, or to what he had got in their place, if he had parted with them.

Now Martin holding the negroes, (or what represented them), under these circumstances, held them, *expressly* admitting and recognizing that the title to them was in the "estate of James Cunningham;" and *expressly* promising on valuable consideration, to buy out that title from the heirs. Such a possession in him was not adverse to the title of "the estate" of James Cunningham, that is, to the title of the heirs of James Cunningham, whose title it is that the administrator asserts in the present suit.   It can no more be said that such a possession is adverse to such a title, than it can be said, that the possession of the vendee of land, holding under the vendor's bond for titles to be made on payment of the purchase money, is adverse to the title of the vendor.   And if the possession was not adverse as to the heirs, it was not

adverse as to the administrator. The bargain was made with him, and made with him as their representative.

The possession of Martin not being adverse, the statute of limitations did not run in his favor.

Nor could the statute begin to run in its favor, as long as the character of it remained unchanged. Before the statute could begin to run in its favor, it had to become *adverse*—adverse to the title of the heirs or of the administrator of James Cunningham.

Is it not to be *presumed*, however, from the lapse of time, that the possession did, some how, become adverse?

More than twenty years had elapsed, from the time when Martin's possession under the settlement began, to the time when the suit was commenced. Possession for such a length of time as twenty years, is, of itself, a fact from which a strong presumption arises, that the possession is adverse to all the world; *Best on Pres. Law Lib.*, 87. But the presumption is not a *conclusive* one. It may be rebutted in various ways. The question, therefore, whether it is to prevail or not, is a question for the jury on the trial, not for the Court on a demurrer.

In this case, the bill says what is equivalent to saying, that neither the complainant, nor the heirs of James Cunningham, knew of the title which the bill seeks to assert, until within less than four years of the commencement of the suit. This, if true, rebuts the presumption.

[1.] For a possession that, in its commencement, is not adverse to the title of the true owner, can only become adverse to that title in one way: The holder must change his mind and *intend* to hold adversely, and *knowledge or notice* of this intention must come to the true owner.

But, in this case, knowledge or notice of such an intention in Martin, could not come to the heirs until knowledge of their title itself, against Martin, under the settlement, had come to them. And knowledge of that title did not come to.

them, until within four years next before the commencement of the suit. So says the bill.

And this suit, it must be borne in mind, is one that, in all likelihood, is for the benefit of none but the *heirs.* Indeed, I doubt extremely, myself, whether they ought not to be the parties suing?—whether the title to the negroes was not completely vested in them on the termination of Robert Cunningham's usufructuary term; whether, therefore, any administrator of James Cunningham can have any interest at all in them? But the question was not considered as raised by the demurrer, for it was not discussed; and, therefore, I pass it over.

The conclusion, then, is that there is not enough apparent on the face of the bill, to require of a Court a *conclusive* presumption, that the possession of Martin, or his representatives, became adverse, at some point of time that was more than four years before the commencement of the suit; and, therefore, that there is not enough on the face of the bill to sustain the ground of the demurrer that consists in a reliance on the statute of limitations.

Whatever is true of this ground of the demurrer, is, manifestly, still more true of the ground that relies on the law of stale demand.

The next most important ground of the demurrer, is, that Lawson was a resident of Burke County, and the suit against him was brought in Bibb County. But the other defendant to the bill, Robert Cunningham's administrator, is a resident of Bibb County; and relief is prayed against him.

[2.] There can, therefore, be no more reason for requiring the suit to be in Burke than there can for requiring it to be in Bibb. This, then, does not seem to us to be a good ground.

That the bill is not multifarious, and that the complainant may, in equity, resort to both Robert Cunningham's administrator, and to Martin, (or his legal representative), is deci-

ded by *Gilbert vs. Thomas, et al.* 3, *Kelly,* 575 ; *and by Hard-wick et al. vs. Thomas et al.,* (same case) 10, *Ga. R.,* 264.

Upon the whole, therefore, we think that the Court was right in overruling the demurrer.

Judgment affirmed.