OF THE

## STATE OF MISSOURI

AT THE

## APRIL TERM, 1905.

*(Continued from Volume 188.)*

## MARION COBERLY et al., Appellants, v. RACHEL COBERLY et al.

### Division One, May 24, 1905.

1. **BAR TO ACTION: Prior Suits.** A suit is not barred because of the pending of another suit involving the same matters if the plaintiffs in this suit were not made parties in that until after this was brought.

2. **PARTITION: Adverse Possession.** A claim of ownership by open, notorious and adverse possession by one of the defendants in an equitable partition does not require the court to relegate the parties to an action at law to determine their right to possession to their respective aliquot parts if the court has no substantial evidence before it supporting the claim.

3. ———: ———: **Friendly Possession of Cotenant.** The possession of one cotenant is the constructive possession of all, and where a possession in its inception is friendly and subordinate to the true title it does not become adverse by mere change of mental attitude, but is presumed to continue such. And where a defendant's possession of his childless uncle's land began in subordination to his title and continued friendly until after his

death, and thereafter he by letters and otherwise acknowledged that the widow owned one-half the land as her election-dower, and paid her rent and claimed decedent's estate was indebted to him for services rendered and for improvements, there is no substantial evidence of adverse possession by him, and nothing in his claim to prevent the court from decreeing partition between the widow and decedent's heirs.

4. ———: ———: **Evidence: Gift: Dower: Acquiescence in Election.** Where the title of the adverse claimant originated in a gift made to him by decedent in his lifetime, the widow of the childless donor is entitled to only her common-law dower. And the fact that the pretended donee recognized the right of the widow to elect to be endowed to one-half of decedent's lands, in lieu of her common-law dower, is tantamount to a solemn admission by him that the lands belonged to decedent at the time of his death.

5. ———: **Rents.** Rents which accrue prior to the death of the land-owner do not enure to the benefit of his heirs by descent cast, and are not the subject of an accounting in an equitable partition suit. But rents accruing after his death and after denial by a cotenant in possession of the interests of the other tenants in common, should be taken into account in selling the interest of the cotenant in possession.

6. ———: **Improvements.** For betterments or improvements made upon land by a cotenant in possession after descent cast he should be allowed, in an equitable partition, to settle the various rights and interests of the heirs.

Appeal from Livingston Circuit Court.—*Hon. J. W. Alexander,* Judge.

REVERSED AND REMANDED (*with directions*).

*J. M. Davis & Sons* and *Lewis A. Chapman* for appellants.

(1) This is a suit in equity for the partition of all the lands owned by Jesse Coberly, deceased, at the time of his death. The petition asks the partition of said land and for an accounting of the rents and profits. This is not the statutory proceeding. It is equitable. The jurisdiction of equity in partition is undoubted and in many cases indispensable, and a bill in chancery will lie for partition even in cases where there is a claim

of adverse possession unless it has been continued sufficiently long to bar a recovery under the Statute of Limitations. Howey v. Goings, 54 Am. Dec. 427; Freeman on Cotenancy and Partition, sec. 449; Dameron v. Jamison, 71 Mo. 97; Holloway v. Holloway, 97 Mo. 639. (2) This being an equitable suit for partition, the court should not have relaxed its grasp until it had disposed of the whole case. James v. Groff, 157 Mo. 420; Savings Inst. v. Collonius, 63 Mo. 290; Mott v. Danville Seminary, 129 Ill. 403. (3) The finding and judgment of the court is erroneous for the reason that the court, as to the fifty-three-acre tract of land, made no decree of partition and found that the defendant, Jesse Lee Coberly, was at the commencement of this suit and still is in adverse possession of the whole of said fifty-three-acre tract. The court did not ascertain or declare the rights of the parties. There was no evidence that the defendant, Jesse Lee Coberly, was in possession of the whole of said fifty-three-acre tract of land. (4) The testimony shows a case of where defendant, Jesse L. Coberly, undertook to claim the shares or interest of the different plaintiffs but not the shares of Rachel Coberly. "Adverse claims of parties to the same undivided interests in real estate may be tried in a partition suit. It is only when defendant is in adverse possession of the whole premises, claiming title adversely to one who claims to be his cotenant, that the latter can be driven to his action of ejectment, but apart from adverse possession alone without show of any title to plaintiffs' undivided interest therein and without any evidence casting a doubt upon the plaintiffs' title, the latter cannot be compelled to resort to ejectment." Holloway v. Holloway, 97 Mo. 629; R. S. 1899, secs. 4386, 4389, 4416, 4417, 4418, 4419, 4420, 4421; Sedgwick and Wait on Trial of Title to Land, sec. 167; Howey v. Goings, 13 Ill. 95; Freeman on Cotenancy and Partition, sec. 450; Earl v. Hart, 89 Mo. 269. (5) Can it be said that Rachel Coberly would have to wait to par-

tition this land until the plaintiffs and defendant had settled their rights to the other undivided half interest in this land? We think not. Earl v. Hart, 89 Mo. 269; Holloway v. Holloway, 97 Mo. 628; Real Estate Co. v. Lindell, 142 Mo. 83. (6) Can a tenant deny his landlord's title? As long as he remains in possession, his possession is the possession of his landlord. The tenant must give up possession and cease to be tenant, before he can dispute his landlord's title. R. S. 1899, sec. 2954; Pharis v. Jones, 122 Mo. 125; Farrar v. Heinrich, 86 Mo. 521; Sutton v. Casseleggi, 5 Mo. App. 111, 77 Mo. 397; Walser v. Graham, 45 Mo. App. 629. (7) If the defendant, Jesse L. Coberly, had been in adverse possession of the entire tract, claiming to be the owner of the same, still it was the duty of the court as a court of equity to have ordered the partition suit to await an action to be brought to try possession, and the court should not have rendered judgment as it did in this case, finding for the defendant, Jesse L. Coberly, and refusing partition. 15 Ency. of Pleading and Practice, 779; DeWitt v. Ackerman, 17 N. J. Eq. 215; Hay v. Entell, 18 N. J. Eq. 252.

*L. A. Martin* and *Frank W. Ashby* for respondent.

(1) When this suit was filed respondent was in open, notorious and exclusive possession of the fifty-three-acre tract claiming title to the same, and no suit in partition could be maintained, until such adverse possession was set aside by suit in ejectment. Lambert v. Bluementhal, 26 Mo. 471; Shaw v. Gregoire, 41 Mo. 407; Rozier v. Johnson, 35 Mo. 326; Forder v. Davis, 38 Mo. 107; Womack v. Whitmore, 58 Mo. 448; Haeussler v. Iron Co., 110 Mo. 188; Colvin v. Hauenstein, 110 Mo. 575. (2) Appellants in their argument state that after Jesse Coberly moved to Chillicothe in 1879, he permitted respondent ''under some arrangements to remain on the land and occupy it until his death in

1897.'' We contend that this admission, if based on the evidence, calls for an affirmance of the judgment. The possession of respondent had been so long prior to the death of Jesse Coberly as to bar a recovery under the Statute of Limitations, and no equitable proceedings can be maintained for partition when the adverse possession has continued so long. The points cited by appellants as applying to equitable partition are not applicable to this case. If respondent was in adverse possession of the fifty-three acres of land at the time of the filing of this suit, then partition of that tract of land cannot be maintained even if the plaintiffs and defendants are cotenants. Hutson v. Hutson, 139 Mo. 229; Estes v. Nell, 140 Mo. 639. (3) If Uncle Jesse gave the land to Jesse Lee in 1882 as a gift, he could not by that gift defeat his wife's dower in the land. That would still subsist. But he himself could not recover the land, after he had given it to Jesse Lee, and stood by all the years and saw Jesse Lee improve it, pay taxes upon it, and hold out to the world that it was his land. Ten years of such adverse possession would defeat his right to recover the land, and if he could not recover the land, the claim of his other heirs at law are barred. After Rachel Coberly brought suit against Jesse Lee for her dower in the land, he bought her out, and paid her $100, and appellants may call it rent if they choose, it in no way helps their claim against the adverse possession of respondent.

LAMM, J.—In November, 1897, Jesse Coberly died, stricken with years, childless and intestate, in Livingston county, leaving a widow, a small estate and numerous inheriting collateral kin to law over the same. The widow, defendant Rachel, became administratrix and within a year elected to be endowed under sections 2939 and 2941, Revised Statutes 1899, of one-half of the estate belonging to her husband at the time of his death.

While the widow is a party defendant, yet the bones of the controversy lie between the defendant Jesse Lee Coberly, a nephew, and the plaintiffs, his brothers, sisters, their descendants and other heirs of decedent.

The suit is an equitable partition affecting three tracts of land, one of fifty-three and a fraction acres, one of two acres and one of fifteen acres.

After averring that Jesse Coberly died intestate, seized of a fee simple title in and to said land, that he left no descendants, but left a widow, the plaintiffs and defendant Jesse Lee, as his only heirs at law, and that the widow duly elected to take a child's part and by said election became the owner of an undivided one-half of the premises, and after averring the respective interests of the parties in the real estate and that the estate had been administered on and debts paid, the petition pleads certain equitable matters whereby an accounting is sought from the widow and the defendant Jesse Lee for certain rents, that certain advancements were made to Jesse Lee Coberly, etc., and ends with a prayer for an accounting, for partition and for such other relief "as pertaineth to equity and good conscience."

Defendant Jesse Lee answered separately, admitting the relationship of the parties as averred and the ownership of the undivided one-half of the premises in question by the widow, Rachel, but denying all other averments.

For other defenses the answer pleads the following:

"Defendant alleges that he is the owner and in possession of the undivided one-half of all the premises in plaintiffs' petition.

"Defendant alleges that he and his grantors, and the defendant, Rachel Coberly, and her grantors, have been in the open, notorious and continued adverse and exclusive possession, claiming ownership of all the

premises described in plaintiffs' petition for more than ten years next before the filing of plaintiffs' petition herein.

"Defendant denies that the plaintiffs or any of them have any, or ever had any, right, title, interest or estate, in, of or to any of the premises described in plaintiffs' petition.

"Defendant alleges that whatever right, title, interest or estate in, of or to any of said premises which plaintiffs have or claim, cannot be adjudicated in this suit."

By a further averment, by way of a plea in abatement, it is alleged that the defendant Jesse Lee brought a suit against his codefendant in partition on the 3d day of March, 1901, and that on the 7th day of May, 1901, he filed an amended petition making all the plaintiffs in the present suit defendants, by leave of court, and that the court has full jurisdiction of the subject-matter of this cause, in that, and can therein adjudicate all the rights of all the parties in the premises.

The defendant Rachel filed the following answer:

"And now at this day comes the defendant, Rachel Coberly, and for her separate and first amended answer, filed by leave of court, first had and obtained, to the petition of the plaintiffs herein, admits that Jesse Coberly died seized in fee of the land described in said petition, admits that she is the widow of Jesse Coberly, and that she duly elected to take one-half of said premises and alleges that her codefendant was claiming to own some interest in part of said premises, and that she purchased one-half interest in the improvements therein which were made by her codefendant, Jesse Lee Coberly, and she alleges that she is the owner of one-half of all the premises set out in said petition, and also the owner of one-half of all the improvements made on certain parts thereof by said Jesse Lee Coberly.

"And for further answer she denies all and sin-

gular the matters and things in said petition contained, except what is above specifically admitted."

To these answers plaintiffs replied, denying each and every allegation of new matter therein.

On a hearing, the court rendered a decree finding the relationship of the parties as set forth in the petition, that Rachel Coberly was the widow of Jesse Coberly, that he died childless and intestate, was the owner of the two-acre and the fifteen-acre tracts of land described in the petition, and found further that in due time the widow duly elected, in accordance with statute law, to take one-half of the real and personal estate of said Jesse Coberly as in such cases made and provided; and that by virtue of said election she is entitled to the undivided one-half interest in "the above described lands of which Jesse Coberly died seized and possessed," to-wit, the two-acre and fifteen-acre tracts. The decree finds the aliquot interests of the plaintiffs, the widow and the defendant, Jesse Lee Coberly, in said tracts, and that the land cannot be partitioned in kind. Whereupon partition was decreed and said two tracts of land were ordered to be sold in accordance with the finding. The decree then proceeds as follows:

"The court further finds that at the time of the commencement of this suit the defendant, Jesse Lee Coberly, was, and still is, in the open, notorious and adverse possession, claiming ownership of the following described land, described as follows, to-wit: [Here the fifty-three-acre tract of land is described.]

"And the court doth further find that all of the right, title and interest of the plaintiffs and of the defendant Jesse Lee Coberly of, in and to the said tract of land cannot be, and the same is not determined in this suit, for the reason that the same is in the adverse possession of the said defendant, Jesse Lee Coberly."

From this decree plaintiffs appeal.

There was no proof that the widow had received any rents to which she may not have been entitled,

either under her quarantine rights, or as dowress, or as administratrix. Nor was there proof of any advancements to Jesse Lee, so that the question of advancements and the question of rents due from widow Rachel may be eliminated from the case.

The same disposition may be made of defendant's plea in abatement for the same reason, and for the additional reason that if proof had been made sustaining the allegations of the plea, it would have availed defendant nought because plaintiffs were not parties to the partition suit brought by Jesse Lee against his co-defendant and were not made parties until after they instituted the suit at bar.

While there was no showing made of a record title in decedent to the fifty-three-acre tract, or any of the land, yet the cause was tried below and is submitted here on the assumption, *passim,* that the record title was in decedent and we will dispose of the case on the theory that such is the fact.

The case made on the facts is as follows:

Jesse Lee Coberly came into the family of his uncle Jesse and aunt Rachel at eighteen months of age and was raised there. His age at the death of his uncle was not shown, but as his letters to his aunt Lucinda Lough, hereinafter referred to, indicate that he was in partnership with his sons so early as 1897, he must have reached mature life, though how long he was doing for himself as his own man and when he was married are left to conjecture.

The fifty-three-acre tract adjoins the two-acre tract, being separated only by a public road. The fifteen acre tract is a detached parcel of land, fenced but unimproved timber, lying a short distance west of the other land. Prior to 1883 the fifty-three-acre tract was fenced with a hedge and in cultivation, but had no other improvements. In 1880, or thereabouts, decedent moved some distance away, to Chillicothe, and there resided several years, plying his

trade as a wagon-maker in a blacksmith shop, being back and forth, however, and so late as 1882 rented the land in question to one of the plaintiffs. He moved from Chillicothe back to the land about the year 1886. Three years before this, in 1883, defendant Jesse Lee came upon the land. The record is silent as to what arrangement was made between him and his uncle at that time, but discloses that he came on the land by the acquiescence of his uncle and that up to the time his uncle moved back, Jesse Lee furnished him and his family with hay and grain off the farm, in what proportion or under what terms we may only guess. When his aunt and uncle returned in 1886, they went to live with him and it seems the two men farmed together, supported by the land for aught appearing. In 1888 the senior Coberly built a dwelling house on the two-acre tract, moved into it and continued to live there with his wife until his death in 1897. After building the house he built a barn immediately across the road on the fifty-three-acre tract and thereafter used the barn practically exclusively for his own purposes, and Jesse Lee continued to farm the fifty-three-acre tract, the two men working together and sometimes the uncle raising a crop on a portion of the land. For instance, the last year before he died he seems to have had a crop of corn and wheat on a portion thereof. At all these times, as before, both families seem to have subsisted off of the land, the crop being divided on some plan or proportion which cannot be got at from the testimony.

The extent and character of the senior Coberly's estate, other than the land in question, is not disclosed, but facts in proof indicate that the land in suit was practically his whole fortune.

It was shown by some of the neighbors that while Jesse Lee did not say that he owned the land, yet he talked as if it was his own and in some instances gave directions in regard to the division fences between him and the adjoining proprietors. At once on his going

upon the land in 1883, he built a small. three-roomed box-house on it, in which he has continued to live to this day. Thereafter he seems to have moved a building, of a character not disclosed, from other land he owned, to this tract, dug a well, built a hog and hen house and a cave, and repaired and made fences. A rough unsatisfactory estimate in bulk of these betterments was hazarded by some of the witnesses, without going into details, or qualifying themselves to speak, as costing originally as much as $1,000 or $1,400, but the proof is not clear as to whether Jesse Lee furnished all the money and material for these improvements or not and no evidence exists as to their present worth. While his uncle and aunt were in town he seems for two years to have paid the taxes and taken the tax receipts in his uncle's name, but it is not shown who furnished the money. He paid no other taxes except for one year after his uncle died and he received credit for this in a settlement with the widow. For other years the taxes were paid by the uncle or the administratrix and for one year by one of the plaintiffs, Marion Coberly.

An orchard was planted on the land in question. It seems to have been commenced by Jesse Lee, but there is evidence that the uncle added to it, and that he always took care of it until the date of his death.

On his uncle's death his aunt Rachel demanded rent of her codefendant and the evidence indicates to our minds that he recognized her right to rent and agreed to pay customary rent and did, in provisions or otherwise, attorn to her by turning over something for the use of the land. The record is exceedingly muddy upon the business relations between him and the widow relative to the land. The case in this behalf seems to have been tried on a kind of "nebular hypothesis," but we gather that she finally sued him for rent and that an adjustment was made by his paying her, or on her account, $100 as a compromise, which was followed by a quit-claim deed, but as this deed was not in-

troduced in evidence, we know nothing of its terms. It appears, moreover, that the widow in this adjustment in some shape or form bought one-half interest in what is called Jesse's improvements, but how much she paid, or how the purchase is evidenced, does not appear. Afterwards, we infer, Jesse Lee started a partition suit against her, but, as the pleadings were not introduced in evidence, it does not appear whether the suit covered the fifty-three acres alone or all of the land.

Early after the demise of his uncle, the defendant endeavored to come to a settlement with the other heirs and wrote two letters to his aunt Lucinda Lough, one of the plaintiffs, which, as they are of persuasive significance in outlining his *then* claims and contentions, we give in full, thus:

"Chula, Mo.

"Bisness Letter

"Uncle Jee left no will so I will haft to get the Property the eserest way I can without going into law valeracion about $2,200.00 in land and personal property. Ant Rachel can take a chiles part witch is one-half she can do what she please with it and that will leave $1,100.00 to bee divided it wont bee mutch to each one there is (70) akers all together. I live on 52 acres the rest is timber. I move here in 1882 and built the house and put the improvements on it I have not binn off of his lands but one year sence we come here in the fall of 1873 when I count up all the money I put on the place in improvements and my wages for work sence I live with him it will run up in the thousands it will cover all the estate and more to for you know how long I lived with him I can sue for my work Ant Rachel is (admix) and settling up the buisness if you have any of that fifteen hundred dollar that Bachlor left you you had better keep it at home for the lawyers here will make you give bond for costs beefore the sute com-

mence and I know that you know that I can collect my wages for work I have mid out my bill running from 1866 until 1879, witch is 13 years and it some thing over $2,440.00 dollars verry near three times as mutch as what the estate is after Rachel get hers out she can use it all until two years is up maba non of us will need it then.

"hoping you will look at this in the right direction I will close.

"Yours truly,
"J. L. COBERLY & SONS,
"Chula, Missouri."

"Chula, Mo., Dec. 18, 1897.

"Well auntt I receive your letter some Days ago I haft to give you credic for not quieing the matter I thought how it would look for you to pay $25.00 for a lawyer there and $50.00 for one here and car fair out here two or three times tow of you $75.00 to come here and expenses and if you winn it it wont bee over $800.00 among three Brothers and 2 sisters witch there was of you I don't think it good sence to give the lawyers all of this land I have and account a gance the estate for over $4,775.25 witch you must understan ant Rachel can take a childs part witch is haft of everthing she can do as she please with it she can sell it or give it away.

"J. L. COBERLY & SONS."

The widow testifies that she never heard her husband say that Jesse Lee owned the land. To the converse, she testifies that her husband claimed to own it and that she never heard defendant lay any claim to it *until after the death of her husband.* A few loose, casual statements were proved to have been made by the senior Coberly indicating a future disposition of the property in favor of Jesse Lee. The strongest statements of this character and the only ones to the precise point were as follows:

William Lason, a carpenter who assisted Jesse Lee and decedent in 1896 to re-roof and raise the height of the story of the little box house on the fifty-three-acre tract, testified as follows:

"Q. Tell the court what he said. A. Well, the old gentleman was there and Jesse both, and Johnson was the contractor, my brother-in-law; I was working under him; I asked the question myself, in regard to who was the boss; I had three bosses, and a man don't like to work under three, and I asked the old gentleman when Jesse put me to some work and the old gentleman came and said we will go and weatherboard; I said: 'Who does this belong to? You seem to be boss and Jesse seems to be boss?' He said 'I have the deed now, but probably some day it will be Jesse's.' "

An insurance agent, Hugh Tudor, testified that he had a conversation with the senior Coberly in November, 1896, at the gate leading to the barn. On being asked to give this conversation, he testified as follows:

"A. I will give you the reason why it all came up. I was in the insurance business and Jesse had remodeled his house and I had bargained for him for insurance on it and I asked him the question: 'Is the title in his name?' and he said it was not; the *house* was his but the title was in Uncle Jesse. I said, 'I will have to have Uncle Jesse's signature.' So I found Uncle Jesse, where I told you, and I told him my mission, as I had dealt with Jesse, this gentleman here, all excepting having his signature to the application, as I understood he had the title. He said yes. 'Well,' he said, 'might as well let it go that way; his building; got considerable interest there and be his some day, any way.' That's the conversation.

"Cross-examination.

"Q. When was this? A. I will have to look at the date for that. (Witness refers to application) November 6, 1896.

Coberly v. Coberly.

"Q. The application is signed by both? A. Yes, sir.

"Q. That was November 6, 1896? A. Yes, sir.

"Q. Was that the sum and substance of all the conversation; did the old man carry any insurance? A. Yes, sir.

"Q. With you on that barn; did he carry insurance on that barn? A. Yes, sir, carried some insurance on the barn, and he said at a prior time, that was six years ago last November when he insured this house on the two acres of ground, and the barn on the other side of the road on the fifty-two acres, he said, he did not hardly know whether to insure that or not; it was this young man's property about as much as it was his and he has got grain and horses on it; and I believe he said he had a horse or two; any way he took out $50 worth of insurance on the barn.

"Q. All on the building or grain? A. Just on the building; said his interest in the contents didn't amount to anything.

"By the court: Did he speak about this party's interest in the building or contents? A. The old gentleman, Jesse Coberly, deceased, took insurance on the barn.

"Q. What did he say the young man had an interest in? A. Said he didn't know whether to insure it or not; it was Jesse Lee Coberly had an interest in the building on it and owned contents mostly; he said he had a couple of old horses there that wasn't worth much and a cow there, but Jesse Lee Coberly, plaintiff in this suit, owned fully as much interest in it as he did. Didn't know whether to insure on it or not; and said, 'I guess I better take some insurance on it,' and I think took $50."

On the pleadings and facts set forth, did the court, *nisi*, arrive at an equitable answer to the problem presented? We think not, for the following reasons:

I. It appears the court came to the conclusion that the proofs showed Jesse Lee Coberly was at the time of the commencement of the suit, in. open, notorious and adverse possession, claiming ownership of the larger tract of land; and, having reasoned out that con- clusion, it refused to proceed further, but relegated plaintiffs to their action at law to determine the right to possession of their aliquot shares. It may be con- ceded that if the court's premise be true, its conclusion was also true, because it is a rule of law in this State that possession of the character found by the court is a bar to proceeding in partition until the right of posses- sion be determined and the title tried in another forum. [15 Ency. of Pl. and Pr., 777; 21 Am. and Eng. Ency. Law (2 Ed.), 1147; Colvin v. Hauenstein, 110 Mo. 575; Hutson v. Hutson, 129 Mo. 229; Estes v. Nell, 140 Mo. l. c. 650, and cases cited.]

But the abstract proposition above does not settle this case unless it be conceded that the court had sub- stantial proof before it showing that the possession of defendant Jesse Lee Coberly was open, notorious and adverse to the other heirs. On the road to the conclu- sion that the ultimate fact of adverse possession exists, the presumption must be reckoned with that the pos- session of one co-tenant is the constructive possession of all, unity of possession being of the very essence of tenancy in common. [Warfield v. Lindell, 30 Mo. l. c. 282; Warfield v. Lindell, 38 Mo. l. c. 586; Wommack v. Whitmore, 58 Mo. 448; see, also, Holloway v. Holloway, 97 Mo. 628.]

Indulging in this presumption it has uniformly been held that cogent proof must be produced of such adverse holding as indicates that a cotenant in posses- sion has unfurled the flag of conquest and exclusive possessory rights upon the land and planted himself under the folds of that flag. Something more is ex- acted of him than is required at the hands of those not cotenants. Mere verbal assertions of ownership will

Coberly v. Coberly.

not do.  Acts of an unequivocal character and of such inherent nature as to impart information and give notice to his cotenants of actual disseizen are required. [See authorities supra.]

Another legal principle must be applied to the facts of this record in solving the question of adverse possession, viz., a possession which was in its inception friendly, as under a lease, or for some definite term, or subordinate to the true title, or originating in a fiduciary relation, may not be turned into an adverse possession by a mere change in mental attitude or by caprice.  [Comstock v. Eastwood, 108 Mo. 41; Handlan v. McManus, 100 Mo. 124; Budd v. Collins, 69 Mo. 129; Lawson v. Cunningham, 21 Ga. 454; Ord v. De La Guerra, 18 Cal. 67.]  The principle that a tenant may not deny his landlord's title is, also, somewhat applicable.

Now it is obvious the possession of Jesse Lee Coberly was entirely friendly for many years and was subordinate to the true title.  So much so, that on the death of his uncle he laid no claim to the title to the land, as shown by his letters, but did claim the estate was indebted to him for services, thereby referring his labor to the relation of employer and employee, express or implied.  So, too, the recognition of the widow as his landlord is fairly susceptible of being construed against a claim of ownership and adverse possession.  Again, a further fact of deep significance is gathered from the admissions in the pleadings and is somewhat established by the proofs, and that is this: If Jesse Lee's title to the land originated in a gift, *inter vivos*, made years prior, as suggested by counsel, then the widow of the donor was only entitled to her common law dower in that land.  [Hornsey v. Casey, 21 Mo. 545; R. S. 1899, sec. 2939.]  The Hornsey case has been held not to apply to cases where it was sought by a fraudulent grant to defeat the inchoate rights of the widow, initi-

Vol 189 mo—2

ate by marriage and consummate by death of her husband. [Newton v. Newton, 162 Mo. 173; Rice v. Waddill, 168 Mo. 99.] But in this case no fraud is intimated and, therefore, when Jesse Lee Coberly recognized the widow's right, as he did, to elect to be endowed of one-half of said tract of land, in lieu of her common-law dower, it is tantamount to a solemn admission by him that the statutory condition precedent was present and that his ancestor was seized of the real estate and that it belonged to him at the time of his death (sec. 2939, supra); for under no other circumstances would she be entitled to the fruits of such election, and the same conclusion would be true, if defendant's right to the land be referred to a contract performed, though none is suggested by the record.

If for the purpose of parity of reasoning we indulge the hypothesis that the rights of Jesse Lee Coberly in the land are referable to some contract made between him and his ancestor for a testamentary devise in his favor, it will yet appear from a close reading how far short the case fell of one which disclosed a contract which could be specifically enforced. This court has lately had occasion in an important case to fully review and apply the authorities on this question (Rosenwald v. Middlebrook, 188 Mo. 58), and therein reasserted the wise doctrine that the proof must be so cogent, clear and forcible as to leave no reasonable doubt in the chancellor's mind of the terms of the contract and its character before it will be enforced by performance.

So that, turn as we may, though recognizing some hardships in the case, we do not feel at liberty to hold with the learned circuit judge that the possession of defendant Jesse Lee was of such character as to stamp it adverse, open and unequivocal as between him and his brothers and sisters and the other collateral kin of the senior Coberly. A court of chancery having the subject-matter of the litigation in its grasp should

have gone on and meted out full relief to avoid a multiplicity of suits. [Holloway v. Holloway, 97 Mo. l. c. 640; Baile v. Ins. Co., 73 Mo. l. c. 384; Woodard v. Mastin, 106 Mo. l. c. 362; Morrison v. Herrington, 120 Mo. l. c. 668; James v. Groff, 157 Mo. l. c. 421.] And the chancellor erred in our opinion in not doing so.

II. Rents, if any accrued, which were due prior to the death of the senior Coberly, did not enure to the benefit of the heirs by descent cast and are not the subject of an accounting in this suit, under the facts before us.

The cause is reversed and remanded with direction to the court below to take an accounting of rents accruing since the death of the senior Coberly which may not have been settled with the widow and which have arisen since the denial by Jesse Lee Coberly of the plaintiffs' rights as cotenants by the filing of his answer. Permission should be granted to the defendant Jesse Lee to amend his answer, if he so elect, setting up any permanent improvements or betterments made by him upon the land since descent cast by the death of the senior Coberly. The court should award partition of the whole three tracts of land, adjusting the aforesaid rents and the aforesaid betterments and improvements, if any be shown on an amended answer, between the plaintiffs and Jesse Lee Coberly so that plaintiffs may have such rent and the defendant Jesse Lee may have the value of such permanent improvements and betterments out of the proceeds of a sale to be decreed, or if the chancellor be of the opinion that a partition in kind can be made without detriment to those concerned, then that said rent and improvements be recognized and adjusted in the division of the land, care being taken that the widow be fully protected in all her legal rights.

The cause otherwise to be proceeded with in accordance with our views of the law herein set forth.

All concur, except *Marshall, J.,* not sitting.