THE STATE ex inf. JAMES S. SIMRALL, Prosecuting Attorney, ex rel. BENJAMIN M. CLEMENTS et al., Appellant, v. GEORGE CLARDY et al.

Division One, March 30, 1916.

1. **CONSOLIDATED SCHOOL DISTRICT: Area: Pleading.** No consolidated school district can be formed unless it contains an area of at least twelve square miles, or has an enumeration of at least two hundred children of school age; and when its directors are called upon collectively, and directly by the State in a suit in the nature of *quo warranto*, to show a right to exist, their answer unless it states one or the other of these necessary statutory requirements, is insufficient.

2. ———: ———: ———: **Assumed at Trial.** But if no point was made, either at the trial or in the appellate court, that the answer of the directors, sued by the State in *quo warranto* to determine the validity of the organization of an alleged consolidated school district, does not contain an allegation that the district contains an area of at least twelve square miles, and if both plaintiff and defendants proved, conclusively, without objection, that the area of said district is more than twelve square miles, the court will assume on appeal that the answer was amended so as to include such necessary allegation.

3. ———: **Filing Papers: Indorsement by Depositary.** The petition, notice, plat, proceedings of meeting, etc., required by section 3 of the Consolidated School District Act (Laws 1913, p. 721) need not be indorsed "filed" in order to be filed with the county clerk and county superintendent. Indorsement on the paper of the fact of filing is not a necessary element of filing, unless the statute specifically so says.

4. ———: **Validity of Organization: Recital in Minutes: Manner of Voting.** If the minutes of the special meeting to organize a consolidated school district state that the vote was taken by ballot and that a certain number of votes were cast, of which a certain number were for consolidation and a less number against it, the organization will not be held invalid on the sole ground that the minutes do not recite that each voter advanced to the front of the chairman and deposited his ballot in a box provided for that purpose, nor because they do not recite that the tellers announced each ballot aloud. The statute (Sec. 10865, R. S. 1909) does not require the minutes to recite the details of each act constituting the statutory requirements of the meeting.

Appeal from Clay Circuit Court.—*Hon. Frank P. Divelbiss,* Judge.

AFFIRMED.

*Kenneth McC. DeWeese* for appellant.

(1) The fact that a city, town or other community has become incorporated by performing the conditions and complying with the statutory requirements prescribed by a general law must be proved. 1 Jones on Evidence, sec. 115, p. 550; Hamilton v. Carthage, 24 Ill. 22-23. Upon a direct proceeding by *quo warranto* or otherwise to test the validity of the organization of a municipal incorporation, it is necessary to show the manner of the organization under the charter, or that all of its requirements have been complied with. State v. Frost, 103 Tenn. 685; State v. Bilby, 60 Kan. 130; People v. Linden, 107 Cal. 94; Kane & Co. v. School District, 48 Mo. App. 408. (2) If a statute creating a corporation and providing for its proceedings shall re-

quire such proceedings to be preserved in a record kept for that purpose, then such record is the only proper evidence of such proceedings and the proceedings of a board of school directors must be shown by their record.  Kane & Co. v. School District, 48 Mo. App. 408; State v. Lawrence, 178 Mo. 374.  (3) The answer of the defendants did not state facts sufficient to show or constitute any lawful warrant of authority to the defendants, to use or exercise the functions of a board of directors of said consolidated school district.

*Ralph Hughes* and *Martin E. Lawson* for respondents.

There seems to be no question about the fact of compliance with the law, but appellant questions the proof of those facts.  The errors claimed are based upon the proposition that parol evidence cannot be adduced to show facts which actually transpired at the meeting for the purpose of organizing said district which the clerk did not record in the minutes.  It will be observed that the minutes of the meeting of organization are very brief, being in fact but a synopsis of what really transpired at the meeting.  It is practically the uniform rule that in such instances parol evidence is permissible to explain the record and supply omissions therein.  Trustees v. Wimberly, 2 Tex. Civ. App. 404;  Morgan v. Wilfley, 71 Iowa, 212;  Township v. Codding, 42 Kan. 649;  Gilmer v. School District, 136 Pac. 1086;  Tucker v. McKay, 131 Mo. App. 728;  Nehrling v. Herold Co., 112 Wis. 558;  Railroad v. Douglas County, 103 Wis. 75;  Watts v. Levee District, 164 Mo. App. 263.

RAILEY, C.—This is an information in the nature of *quo warranto,* exhibited by the prosecuting attorney of Clay County, Missouri, at the relation of Benjamin M. Clements, John Filger and Philip Klamm as the

board of directors of School District Number Four in Clay County, against George Clardy, Ernest Capps, John Filger, John M. Blevins, James Allen and Lee Williams, assuming to act as the board of trustees of an alleged consolidated school district styled "Consolidated School District Number One of Clay county, Missouri." Its purpose is to test the validity of the organization of the district under the act of the Legislature approved March 14, 1913, entitled, "An Act to provide for the organization of consolidated schools and rural high schools, and to provide State aid for such schools, with an emergency clause."

The answer denies the usurpation charged and proceeds as follows:

"Further answering, these defendants say that heretofore a petition signed by more than twenty-five qualified voters of the community hereinafter described, was filed with the county superintendent of public schools of Clay County, Missouri, showing that they desired to form said community into a consolidated school district under the provisions of an act of the Legislature of the 47th General Assembly of Missouri, entitled, 'An Act to provide for the organization of consolidated schools and rural high schools, and to provide State aid for such schools, with an emergency clause,' approved March 14, 1913; that on receipt of said petition, the county superintendent of schools visited said community and investigated the needs of the community and determined the exact boundaries of the proposed consolidated district, locating the boundary lines as in his judgment would form the best possible consolidated district, having due regard also to the welfare of adjoining districts; that said county superintendent of schools called a special meeting of all the qualified voters of the proposed consolidated district for considering the question of consolidation, by posting within the proposed district ten notices in ten pub-

lic places, stating the place, time and purpose of said meeting, at least fifteen days prior to the date set for said meeting, and also posted within said district fifteen days prior to the date of said special meeting at least five plats of the proposed consolidated district, which plats and notices were posted within thirty days after the filing of said petition; that said special meeting was called to meet at the hall in Linden, Missouri, on April, 20, 1914, at two o'clock P. M., as stated in said notices.

"These defendants further state that the said county superintendent of schools filed a copy of the petition and of the plat aforesaid with the county clerk of Clay County, Missouri, and that he sent and took one of said plats to the said special meeting, which he attended in person, and on the date and at the hour aforesaid, said county superintendent of schools called said meeting to order in person; that at said meeting, John M. Blevins was elected chairman and Ernest Capps was elected secretary of said meeting; that thereupon, the meeting proceeded to vote by ballot upon the proposition to organize the said consolidated district, those voting for such organization having upon their ballot the words 'For Organization,' and those voting against the organization having on their ballots 'Against Organization,' and each person desiring to vote advanced to the front of the chairman and deposited his ballot in the box used for that purpose. When all present had voted, the chairman appointed two tellers who called each ballot aloud and the secretary kept a tally and reported to the chairman who announced the result of the vote, and a majority of the votes being cast for organization, the chairman so declared, and declared the Consolidated District No. 1 organized, and called for the next order of business, which was the election of six directors, two of whom were to be elected for three years, two for two years, and two for one year, each director

being elected separately and the result announced in the manner prescribed for organization, and these defendants were, in said manner and in accordance with law, duly elected directors of said Consolidated School District No. 1, they duly qualified and have since then been, and are now, acting as such board of directors; that the chairman and secretary of said special meeting kept a record of the proceedings thereof, which they certified to the county clerk of Clay County, Missouri, in which said entire consolidated school district is located, and the county school superintendent of Clay County, Missouri, filed a copy of the petition and of the plat of said proposed county school district with the county clerk of said Clay County, Missouri.''

The appellants, not challenging the sufficiency of the answer, replied with a general denial. On the trial the appellant assumed the burden of showing the validity of the organization of the defendant district, and introduced: (1) A copy of a petition for the consolidated district, addressed to James A. Robeson, the superintendent of schools of the county, purporting to be signed by forty-one qualified voters of school districts number 50 and 63 and adjoining districts, notifying him of their purpose to organize a consolidated school district in accordance with said act, and asking him to visit the community to investigate its needs, and to make and post plats and notices of a special school meeting to vote on the organization of such consolidated district. This petition and notice purported to be filed in the office of the superintendent March 17, 1914. (2) A notice of such special meeting to be held at a place therein named, on April 20, 1914, at two o'clock, P. M., to consider the organization of such district and elect six directors therefor. This was signed by the county superintendent of public schools, and dated April 4, 1914. This was by the superintendent, taken to and laid before the special meeting, as was also

the original plat made by him, a copy of which he filed in the office of the county clerk. (3) A plat of the proposed Consolidated School District No. 1, of Clay County, in townships 51 and 52, ranges 32 and 33 in said county. This plat was endorsed: "Filed in my office this 4th day of April, 1914. T. C. Stean, Clerk." Evidence was introduced showing that copies of the petition and notice were deposited with the clerk in his office at the time of the filing of the plat, and had been kept there ever since. (4) Another plat, substantially like the foregoing from the office of the county clerk, who testified that he made it for his own use. (5) "Minutes of Special Meeting of Patrons of Proposed Consolidated District," held at the time and place named in the notice. This was marked: "Filed in my office the 23rd day of April, 1914. T. C. Stean, County Clerk." It recited, among other things, the adoption of the proposed consolidation by a vote sixty-two to forty-nine, and the election by ballot of these respondents as directors. (6) A copy of the foregoing minutes with the addition that the meeting was held at two o'clock, P. M. This was certified to be a true copy of the minutes of the meeting by John M. Blevins, chairman, and Ernest L. Capps, secretary, of the same, and verified by their affidavit made May 18, 1914, before the clerk of the county court, and filed in his office on the following day. (7) A copy of the same similarly certified and verified and filed in the office of the superintendent of public schools on the same day. (8) A copy of the petition above mentioned, marked: "Filed in my office this 17th day of March, 1914, James A. Robeson, County Superintendent." (9) A copy of the above mentioned notice endorsed: "Filed in my office this 23rd day of April, 1914. James Robeson, County Superintendent of Public schools." (10) Copies of plats from the records in the office of the clerk of the county court indicating that all of school district

number 50, and parts of 51, 62, 63, 64 and 65, were included in the new consolidated district. All except two of the forty-one signers of the petition were shown to reside within the limits of the consolidated district, and to be qualified voters at the places of their residences. Mr. Robeson, county superintendent of schools at the time, testified that he posted the ten notices of the special election and five plats of the proposed district in public places within the territory included, on April 4, 1914. The plat is drawn on a sectional plat of the United States survey of the four townships 51 and 52 of ranges 32 and 33 in which the consolidated district is situated, and shows that it contains an area at least equal to twenty-seven sections.

With reference to the enumeration of the children of the territory included, the following is the only reference we find in the record.

"By the Court: What about the enumeration? It says none should be formed unless they have two hundred children, unless that is admitted.

"By Mr. DeWeese: No."

Mr. Stean was then recalled and testified:

"Q. Can you get the enumeration showing the number of school children within this consolidated school district?

"By Mr. Hughes: The last enumeration made before the proceedings to form the consolidated district,

"A. It's made in five first and then one.

"Q. I wish you would get those records, the five that were made just before and the one before."

There were two small towns in the district, Linden and Gashland, neither of which was incorporated. The directors of the consolidated district met after the election and on the same day, and organized by the election of John M. Blevins, president, George T. Clardy, vice president, and Ernest Capps, secretary, took the oath of office, and proceeded to the transaction

·of their business. The record of this meeting was written on loose sheets of paper and afterward copied in a book procured for such purpose, and the sheets were lost or destroyed.

Objections were properly made and exceptions saved by the plaintiff with reference to all the questions we shall consider.

The appellant's assignment of errors is as follows:

"1. The answer of defendants did not state facts sufficient to constitute a legal response to the several matters and things set forth in the information and inquired for, or to constitute any lawful warrant of authority to use or exercise the functions of a board of directors of said consolidated school district.

"2. The court erred in the admission of parol evidence to supply the deficiency of the record.

"3. No sufficient petition was filed with the county superintendent of schools, as required by section 3 of the Act of March 14, 1913.

"4. No sufficient notice of a special meeting was given by the county superintendent of schools.

"5. No sufficient plats of the proposed consolidated district were posted as required by law.

"6. The proceedings of the special meeting, certified by the chairman and secretary to the county clerk and to the county superintendent of schools, as required by said act, were insufficient.

"7. The copy of the petition and plat filed in the office of the county clerk were insufficient in law.

"8. The record did not show that the proposed consolidated school district contained an area of at least twelve square miles. This was undertaken to be supplied by parol evidence.

"9. The evidence did not show that the proposed consolidated school district had an enumeration of at

least two hundred children of school age. This was undertaken to be supplied by parol evidence.''

I.  The appellant's counsel have furnished us with an excellent brief of points and authorities which he evidently believes to be applicable to this case, and considerately, and not without hazard, has entrusted to us the work of finding the facts which fit them in a somewhat obscure record.  The public interests involved are such that it has been advanced upon our docket for argument and disposition, and we have given careful consideration to the record to ascertain the real questions upon which the parties differ.  At the outset we are met with the unexplained assertion that the answer is not sufficient to show the right of the respondents, which depends entirely upon the question whether or not the organization of Consolidated School District No. 1, in Clay County, Missouri, of which they assume to exercise the office of directors and, collectively, to act as a board of directors, is valid; in other words, whether there is such a school district by virtue of the proceedings here called in question.  This depends entirely upon the provisions of the act of the General Assembly entitled, ''An Act to provide for the organization of consolidated schools and rural high schools, and to provide State aid for such schools, with an emergency clause,'' approved March 14, 1913. [Laws 1913, p. 721.]

II.  The statute referred to provides: ''No consolidated district shall be formed under the provisions of this act unless it contains an area of at least twelve square miles, or has an enumeration of **Consolidated** at least two hundred children of school **School District:** **Validity of** age.'' [Laws 1913, p. 722, sec. 2.] **Organization.** These conditions are evidently jurisdictional.  They are not mere requirements relating to the proceedings by which the organ-

ization is to be accomplished, but are expressed in terms of prohibition, and relate to the nature and constitution of the thing which may be incorporated, so that if they are not met the incorporation would necessarily be a nullity. In this proceeding the respondents are called upon directly by the State to show their right to exercise, collectively, the duties of the governing body of a quasi-municipal corporation for school purposes. That right depends upon the existence of the office and the existence of the office depends on the existence of the municipality to which it pertains. They must show its existence in return to the challenge of the State, and in doing so must plead the existence of the facts necessary to its creation. They have failed in their answer to plead the conditions prescribed by the statutory requirements we have stated with respect to area and number of children which it must contain, and their pleading is therefore insufficient. But as appellant assumed the burden of showing that the proposed consolidated district had not been legally established; and as both plaintiff and defendant proved conclusively, without objection, that the area of said proposed consolidated district contains more than twelve miles square; and as no point was made, either in the trial court, or in this court, respecting this matter; and as the answer could have been amended at the trial in accordance with the proof aforesaid, we will consider the answer as having been amended so as to set out the area of the proposed consolidated district aforesaid, and dispose of the case as though said amendment had been made. [Darrier v. Darrier, 58 Mo. l. c. 233; Baker v. Railroad, 122 Mo. l. c. 547-8; State ex rel. v. McQuillin, 246 Mo. l. c. 594.]

III. Section three of the act provides that "when the resident citizens of any community desire to form a consolidated district, a petition signed by at least twenty-five qualified voters of said community shall be

filed with the county superintendent of public schools.''
It becomes his duty on receipt of this to visit the com-
munity, investigate its needs and deter-
mine the exact boundaries of the proposed
district, and make plats thereof. He shall
then call a special meeting, giving at least
fifteen and not more than thirty days' notice thereof,
by posting ten notices stating the place, time and pur-
pose of such meeting and five plats in public places
within the proposed district. The meeting shall com-
mence at two o'clock P. M. It also provides that he
shall file a copy of the petition and of the plat with the
county clerk and shall take one plat to the special meet-
ing, which ''shall be called to order by the county su-
perintendent of schools or some one deputized by him
to call said meeting to order.'' It shall then choose a
chairman and secretary and proceed in accordance
with section 10865, Revised Statutes 1909. It further
provides that ''the proceedings of this meeting shall
be certified by the chairman and the secretary to the
county clerk or clerks and also to the county superin-
tendent or superintendents of schools of all the coun-
ties affected.'' The superintendent is also required to
file a copy of the petition and plat with the county clerk.
The proof was unquestioned that all the papers so re-
quired to be filed with the superintendent and clerk of
the county court were, in due time, deposited in their
several offices and were kept there; but the course of
the counsel in introducing and resisting the introduc-
tion of the evidence upon the trial indicates the theory
of the plaintiff to have been that the fact of filing in-
cluded an indorsement to that effect upon all the sev-
eral papers, to constitute a record which would be the
sole evidence of the fact; while the proof was made
in some instances by the production of the papers by
the proper custodian and parol evidence that they were
deposited and kept among the papers of his office.

*Filing:
Necessity of
Indorsement.*

This is an erroneous view of the question, which is an old one and has long been settled by adjudication, and the *dicta* of many courts and writers. Even the word "file" is a form of the Latin word which signifies a thread, and is suggestive of the manner in which those papers and documents not considered of sufficient importance to justify spreading upon the record, were strung for preservation. A distinguished author defines the word "file" as follows: "To file, and filing, mean the act either of the party in bringing the paper and depositing it with the officer, for keeping, or the act of the officer in folding, indorsing and putting up the paper." [Abbot's Law Dictionary.] Another distinguished legal lexicographer, Bouvier, under the same title, defines it as follows: "In the sense of a statute requiring the filing of a paper or document it is filed when delivered to and received by the proper officer to be kept on file." That the statement of the officer upon the document does not constitute a filing is illustrated in Sternberger v. McSween, 14 S. C. 35, 42, where it was held that a paper which was taken to the officer to be filed, and was marked "filed" by the officer, who handed it back, and it was taken away, had not been filed.

All these papers had been deposited with the clerk and superintendent, as the case might be, to be kept among the papers of the office, and it was competent to prove that fact by parol. If the paper was in existence it could be produced by the officer; if not, its loss or destruction while it constituted a record of the proper office, could be proven in the same manner.

IV. One other point which we have been able to glean from the record, consists in a general complaint as to the sufficiency of the minutes of the special meet-

ing filed in the respective offices of the clerk of the county court and county superintendent of public schools. It is founded upon the requirement of section 10865, Revised Statutes 1909, which governs the proceedings of the special meeting. This requires that the vote on the organization of town and city school districts shall be taken by ballot, "and each person desiring to vote shall advance to the front of the chairman and deposit his ballot in a box to be used for that purpose. When all present shall have voted, the chairman shall appoint two tellers, who shall call each ballot aloud, and the secretary shall keep a tally and report to the chairman, who shall announce the result." The minutes in this case speak as follows:

*Recitals in Minutes.*

"After stating business of meeting, Chairman called for vote by ballot on matter of proposed consolidation. Ballots to contain words, 'For Consolidation,' or 'Against Consolidation.'

"Remarks on question before the house called for and made by Prof. Robeson along lines of general information.

"Balloting resulted as follows: For Consolidation, 62, against Consolidation, 49. Majority for Consolidation, 13. Total vote, 111. Proposition carried."

The statute does not undertake to say in what form the minutes of the meeting shall be kept or how minutely, if at all, they shall go into the details constituting each act of the meeting. It is evident that the highest degree of verbal skill cannot be expected from the secretaries of such meetings. We think that the statement that the vote was taken by the chairman by ballot and the result ascertained and declared necessarily includes the details which constitute the taking of the vote under the statute. To be sure, the minutes do not say that each person voting advanced to the front of the chairman or that a box was provided for

the ballots or that the chairman appointed two tellers to read the votes aloud to the secretary, who kept a tally and reported the result to the chairman. It is unnecessary to decide that these things are not of such vital consequence that if one or all had been omitted the proceeding would have been void, because they are necessarily included in the general statement contained in the minutes.

Finding no error in the record, we affirm the judgment.

Brown, C., dissents as to result only on the ground that he thinks the Act of March 14, 1913, requires an enumeration of 200 as a condition of organization under it.

PER CURIAM.—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.