Vol. 305]          APRIL TERM, 1924.          297

State ex inf. Barrett ex rel. Newman v. Clements.

THE STATE ex inf. JESSE W. BARRETT, Attorney-
General, ex rel. FRANK NEWMAN et al., v. B. M.
CLEMENTS et al.

In Banc, September 18, 1924.

1. CONSOLIDATED SCHOOL DISTRICT: Disorganization: Necessary
Vote. The statute (Sec. 11242, R. S. 1919) requires that two-thirds
of all the taxpaying voters residing in a consolidated school dis-
trict shall vote for disorganizing such district, in order to effect
its dissolution. Two-thirds of those present and voting and hav-
ing qualifications to vote for disorganization are not sufficient, un-
less they constitute two-thirds of all the taxpaying voters residing
in the district.

2. ———: ———: Voter and Taxpayer. A voter is a person qualified
to vote for elective officers generally. A taxpayer is a person own-
ing property in the State subject to taxation and in which he regu-
larly pays taxes. A person qualified to vote upon a proposition to
dissolve a regularly organized consolidated school district is one
who is both a qualified voter and taxpayer and resides within the
district.

3. ———: ———: Recitals in Minutes of Meeting. Minutes of the
meeting properly called and held for the purpose of voting on a
proposition to dissolve a consolidated school district, duly signed
by the chairman and attested by the secretary, and reciting that
"said proposition was duly carried by the votes of more than two-
thirds of the qualified voters and resident taxpayers of said dis-
trict," is prima-facie proof of what took place at the meeting, and
also prima-facie proof that the 394 votes cast for dissolution con-
stituted the votes of more than two-thirds of the resident taxpayers
of the district.

4. ———: ———: Presumption That Voters Were Qualified. Until
the contrary is shown, it must be presumed that none but resident
qualified voters who were taxpayers voted at the regularly called
meeting to dissolve the consolidated school district.

5. ———: ———: ———: Two-Thirds. Where the authenticated
minutes of the meeting to dissolve the district recite that 394
votes of resident voters and taxpayers voted for disorganization of
the consolidated school district, and the greatest number of tax-
payers of the district for either of the two preceding years, as
shown by the public records, was 468, and the qualifications to
vote of only 28 of the 394 are challenged, there were still two-thirds
of the entire number in the district who voted for dissolution, even
if the challenges of those 28 be disregarded.

6. ———: ———: **Determining Challenges.** It is wholly unnecessary to determine whether certain voters were or were not qualified resident taxpaying voters, where, if all of them were held to be disqualified, the result would still be that two-thirds of all the resident taxpaying voters of the district, as shown by the properly authenticated minutes of the meeting, voted for disorganization. Where there is no testimony tending to show that a particular person, who actually voted, was or was not a resident voter and taxpayer of the district, the presumption must be indulged that he was such; and such presumption is peculiarly justified where the district embraced a rural community five miles square. If the authenticated minutes of the meeting show that, after excluding all persons who voted at the meeting concerning whose qualifications to vote a question is raised, two-thirds of the resident taxpaying voters of the district voted for consolidation, it is wholly immaterial whether those excluded and whose votes are challenged were or were not qualified voters.

7. ———: ———: **Organization of Common School Districts.** The consolidated school district having been dissolved, common school districts may be formed of the territory embraced therein, and if formed in the manner prescribed by law their directors cannot be ousted by *quo warranto.*

Headnotes 1, 3, 5 and 7: Schools etc.: 1, 35 Cyc. 858; 3, 35 Cyc. 877; 5, 35 Cyc. 858; 7, 358 (1926 Anno). Headnote 2: Elections, 20 C. J. sec. 12; Schools etc., 35 Cyc. 858; Taxpayer, 37 Cyc. 877. Headnotes 4 and 6: Elections, 20 C. J. sec. 324; Schools etc., 35 Cyc. 877, 858.

*Quo Warranto.*

PRELIMINARY RULE DISCHARGED.

*W. F. Zumbrunn, W. B. Brown* and *Alan F. Wherritt* for relators.

*James E. Simrall, Martin E. Lawson* and *Francis G. Hale* for respondents.

(1) The real issue in this case is the existence or non-existence of the common school districts of Faubian, Big Shoal and Englewood. In effect, the charge is not that respondents intruded into offices, but rather that they usurped franchises—no corporations, and consequently

no corporate offices, existing. State ex rel. Read v. Weatherby, 45 Mo. 17. (2) The evidence produced and the admissions made by relators cast upon them the burden of proof and the necessity for assuming the laboring oar in overcoming the presumption of regularity of the minutes of the dissolution meeting and of the proceedings which they evidence. State ex rel. v. Kupferle, 44 Mo. 154; State ex inf. v. Heffernan, 243 Mo. 442; Windes v. Nelson, 159 Mo. 51. (3) The minutes of the dissolution meeting, being the only proper and necessary returns of the proceedings and results of the meeting, make at least a prima-facie showing as to the result of the voting, and until this prima-facie showing is overcome by evidence, it must stand. Hartwell v. Parks, 240 Mo. 537; Saule v. Thelander, 31 Minn. 227; 35 Cyc. 877; State ex rel. v. Eden, 54 Mo. App. 31; Wigmore on Evidence (2 Ed.) sec. 2534; 20 C. J. 238. (4) The law presumes, at least in the absence of evidence to the contrary, that the duly elected officials of the dissolution meeting acted honestly and faithfully in the discharge of their duties, and that the minutes of the meeting correctly show the result thereof. Chlanda v. Transit Co., 213 Mo. 244; Hartwell v. Parks, 249 Mo. 537; Windes v. Nelson, 159 Mo. 51; State ex inf. v. Heffernan, 243 Mo. 442; Gass v. Evans, 244 Mo. 329; 20 C. J. 240. (5) The law further presumes, in the absence of evidence to the contrary, that all persons voting at the dissolution meeting were qualified to vote in that meeting. Gumm v. Hubbard, 97 Mo. 311; Gass v. Evans, 244 Mo. 329; Windes v. Nelson, 159 Mo. 51; 20 C. J. 239, note, 55; State v. Binder, 38 Mo. 451. (6) The *onus* of showing that those who voted were not qualified voters is on relators. South Co. v. Combs, 53 Mo. App. 298; State v. Hudson, 86 Mo. App. 501; Gilliland v. Railroad, 19 Mo. App. 411; Appleman v. Sporting Goods Co., 64 Mo. App. 71; Windes v. Nelson, 159 Mo. 51; Gass v. Evans, 244 Mo. 329. (7) A taxpayer is one who owns real or personal property on which he regularly pays taxes. It is not sufficient to show merely that at one time

or another he was assessed. 37 Cyc. 1597; Thompson v. Newtown, 21 N. H. 595; State ex inf. Sutton v. Fasse, 189 Mo. 532.

DAVID E. BLAIR, J.—This is an original proceeding in the nature of *quo warranto* whereby relators seek to oust respondents from their alleged pretended offices as directors of three common school districts in Clay County. Said districts are alleged to be comprised within and to be part of Consolidated School District No. 1 of Clay County, notwithstanding an alleged dissolution of such consolidated school district. Our writ to show cause issued, accompanied by our injunctive order restraining respondents in certain particulars not now important. Service of our writ was accepted by counsel for respondents, and their appearances entered in this court.

The common school districts of Clay County included in the consolidated district prior to May 3, 1923, were Faubian No. 51, Big Shoal No. 65 (63), Englewood No. 64, Linden No. 63 (?) and Fairview No. 50. The respondents claim to be directors of Faubian, Big Shoal and Englewood common school districts, organized since such alleged dissolution of the consolidated district. Big Shoal district is referred to in the record both as No. 65 and No. 63, but that is of no importance now.

Separate answers and returns were filed by respondents. Relators' replies thereto were general denials. An issue of fact was thus raised, and Hon. Nick T. Cave, of the Callaway County Bar, was appointed by this court as its commissioner to take the testimony and report to the court. He has filed his report, and a complete transcript of the testimony taken by him.

The information and the answers and returns are quite lengthy. We are saved the necessity of setting out even the substance thereof, because of admissions made by counsel. The sole question for decision is whether or not Consolidated School District No. 1 of Clay County was legally dissolved or disorganized on May 3, 1923.

The transcript contains the following statement of an agreement by counsel, to-wit:

"MR. HALE: For the purpose of the record respondents would like for it to show that counsel for relators and respondents agree, that the dissolution election held in Consolidated School District No. 1 in Clay County, Missouri, at Linden in that district, on May 3, 1923, was regularly called in the manner and by the means provided by statutes, and that thereafter the several elections in Faubian District No. 51, in Big Shoal District No. 63 and in Englewood District No. 64, were all three called for re-organization purposes as set out in respondents' return, were all duly held, and that if the proposition to dissolve Consolidated School District No. 1 duly carried at the election on May 3, 1923, then said school districts, Faubian, Big Shoal and Englewood, were and are duly organized common school districts, and respondents herein are the duly elected, qualified and acting directors of said common school districts.

"MR. WHERRITT: Relators admit that the foregoing statement of facts is correct, and that if Consolidated School District No. 1 of Clay County, Missouri, was legally dissolved on May 3, 1923, the respondents in this cause of action are the duly elected, qualified and acting directors of said common school districts."

Other similar admissions appear in the transcript, but the foregoing is sufficient in scope for our purpose. Such admissions make it unnecessary for us to consider the various allegations of fraud, bad faith and force made against respondents by relators, or the sufficiency of any of the preliminary proceedings preceding the election on May 3, 1923, itself, or any of the subsequent proceedings, incident to the organization of the present Faubian, Big Shoal and Englewood common school districts, or the regularity of the election of respondents as directors thereof.

We digress to say that it is apparent that the present lawsuit is by no means the first litigation arising since

the organization of said consolidated school district. The organization itself was attacked by some of the present respondents. [See State ex inf. Simrall ex rel. Benjamin M. Clements v. Clardy, 267 Mo. 371.] The information in the case at bar alleges the pendency and final disposition of other suits. The various lawsuits indicate most serious factional differences among the residents of the consolidated district. Such differences have no bearing upon the question here at issue, but they shed an interesting sidelight upon the case.

The only queston left in the case, in view of the admissions, is this: Did two-thirds of the resident voters and taxpayers of such consolidated school district vote to dissolve such district? If they did, the lawsuit is ended in favor of respondents. If they did not so vote, the consolidated district is still in existence, organization of the common school districts was wholly unauthorized and a mere nullity, there are no offices of directors of such districts and respondents should be ousted from their pretended offices.

The statute governing disorganization or dissolution of consolidated school districts is Section 11242, Revised Statutes 1919, and reads as follows:

"Any town, city or consolidated school district heretofore organized under the laws of this State, or which may be hereafter organized, shall be privileged to disorganize or abolish such organization by a vote of the resident voters and taxpayers of such school district, first giving fifteen days' notice, which notice shall be signed by at least ten qualified resident voters and taxpayers of such town, city or consolidated school district; and there shall be five notices put up in five public places in said school district. Such notices shall recite therein that there will be a public meeting of the resident voters and taxpayers of said school district at the schoolhouse in said school district, and at said meeting, if two-thirds of the resident voters and taxpayers of such school district shall vote to dissolve any such town, city or consolidated school

district, then from and after that date the said town, city or consolidated school district shall be dissolved, and the same territory included in said school district may be organized into a common school district under Article III of this chapter.''

Admittedly the procedural steps outlined in the statute were duly and properly taken. The sole question is whether two-thirds of the resident voters and taxpayers of such consolidated school district voted at said meeting to dissolve said consolidated district.

The parties are in agreement (and such is our view), that the statute requires that two-thirds of all the tax-paying voters residing in the consolidated district, vote for such disorganization, and that it is not sufficient that two-thirds of those present at the meeting and having such qualifications vote for such disorganization. [See State ex inf. Major v. Kansas City, 233 Mo. 162, l. c. 189 and cases cited thereat.]

The word voter is readily and universally understood to mean a person who is legally qualified to vote for elective officers generally. The word taxpayer is probably not so generally or clearly understood. In State ex inf. Sutton v. Fasse, 189 Mo. l. c. 536, a taxpayer is defined as ''a person owning property in the State subject to taxation and on which he regularly pays taxes.'' Such definition appears to be a very satisfactory one. Such voter and taxpayer must also reside in the consolidated school district and two-thirds of all such must vote to disorganize or dissolve the district before it is legally dissolved.

Regardless of where the burden of proof in the case rested, relators assumed same upon the hearing before our commissioner. Among other things, relators offered in evidence the minutes of the meeting of May 3, 1923, duly signed by the chairman and attested by the secretary thereof. An affidavit signed by the same officials, which was filed with the County Clerk of Clay County, was also offered in evidence. It set forth the same facts as did

the minutes of the meeting. Among other things, the minutes recited as follows:

"Whereupon said meeting proceeded to vote on said proposition by ballot; and the vote thereon being finished, and all the ballots cast thereat being counted, it was found by the officers of said meeting, and so declared, that three hundred ninety-four (394) votes were cast for the dissolution of said School District, and three (3) votes cast against the dissolution of said district, and that said proposition·duly carried by the votes of more than two-thirds of the qualified voters and resident taxpayers of said district. Whereupon the chairman declared said district duly dissolved. No further business appearing the meeting duly adjourned."

It will be noted that the minutes recited that "said proposition duly carried by the votes of more than two-thirds of the *qualified voters and resident taxpayers* of said district." That part of the recital we have italicized is clearly equivalent to "resident voters and taxpayers" as required by the statute. A person cannot be a *qualified voter* of the district unless he is a resident thereof.

The statute does not provide for the taking of any particular steps to evidence the disorganization or dissolution of a consolidated school district by the meeting provided for in the statute, other than that two-thirds of the resident voters and taxpayers vote for dissolution at a meeting duly called for that purpose. Such meeting is necessarily governed by ordinary and orderly parliamentary usage, which requires that announcement he made of the decisions reached by the meeting upon questions properly pending before it and that minutes be kept of the proceedings of such meeting. Of very necessity, such minutes constitute prima-facie proof of what transpired at such meeting.

It is apparently conceded that the showing of the minutes that 394 persons voted for dissolution or disorganization is prima-facie proof of such fact. In this connection we digress to add that there is no question

under the testimony that 394 persons, present at such meeting, did so vote. Relators do not dispute that fact, as we understand it. Before the result of the election could be declared, ascertainment must be made by the meeting of the total number of resident voters and taxpayers of the district. The statute gave the meeting the power to dissolve the consolidated district. The power to determine, at least prima-facie, all the facts authorizing such dissolution necessarily resided in the meeting itself. It seems clear, therefore, that the declaration of the minutes of the meeting, that the 394 votes cast for dissolution constituted the votes of more than two-thirds of the resident voters and taxpayers of the district, constituted prima-facie proof of that fact also. Such is the necessary result of the powers conferred upon such meeting by the Legislature. However, it is unnecessary for us to rely upon such presumption to ascertain the number of resident voters and taxpayers in the consolidated district. There is direct proof in the record upon that question.

It must be presumed that none but resident voters and taxpayers voted at said meeting, until the contrary is shown. [20 C. J. 239; State v. Binder, 38 Mo. l. c. 456; Gass v. Evans, 244 Mo. l. c. 344; Gumm v. Hubbard, 97 Mo. l. c. 320; Windes v. Nelson, 159 Mo. l. c. 66.]

Relators called as witnesses before our commissioner 189 persons "who testified as to their constitutional qualifications as voters, but who did not vote" at said meeting. Relators contend that the record shows that 151 of these were taxpayers. Respondents claim that 47 of said 189 witnesses were not shown to have been taxpayers of the district and that 28 others had paid no taxes whatever. But we will assume for the moment that relators are correct and that they actually produced 151 voters and taxpayers of the district, residing therein at the time of the alleged dissolution, who did not vote at such election. They, with three who were counted as voting against dis-

solution, make 154 who clearly must be counted against such dissolution. If that were all the evidence as to the number of resident voters and taxpayers who must be counted against such dissolution, it would have required only 308 votes to disorganize on May 3, 1923.

Respondents called 273 persons who testified that they voted at the dissolution election. Relators contend that only 245 of these persons proved to be resident voters and taxpayers. Let it be so assumed. That evidence only tends to show that 28 votes were cast by persons not qualified to vote. Such evidence does not show that any others than those testifying were not qualified. The presumption of full right to vote still adheres to those concerning whose qualifications no testimony whatever was offered. [Windes v. Nelson, supra, page 66.] If all the 28 votes, which relators contend were cast by persons not qualified to vote, be taken as voting for dissolution and deducted from 394, there are still remaining 366 votes for dissolution, none of which can be said to have been successfully challenged.

Relators alleged in their information that there were 530 resident voters and taxpayers in the district. However, there was no proof made of any such number. But if there were that many, two-thirds thereof would have been 354, or twelve less than the 366 persons we have found to have voted for the dissolution of the district. All of these must be regarded as qualified voters under the indulgence of permissible presumptions as to some and proof actually made as to others.

It appears that the greatest number of taxpayers of the consolidated district for either 1922 or 1923 was 468, as shown by the public records. Two-thirds of that number are 312. Hence, on any theory advanced by relators, the vote for dissolution was sufficient to effect disorganization of the district under Section 11242, Revised Statutes 1919.

We deem it unnecessary to determine from the testimony of each witness whether relators or respondents are correct in their contentions concerning what such testimony shows. We are undoubtedly correct in taking the position that, where there is no testimony tending to show that a particular person who actually voted was or was not a resident voter and taxpayer, the presumption must be indulged that he was such. Such presumption is particularly justified in a case of this sort. Here is a country community comprising an area of five by five and one-half miles. In a community of that size, the residents thereof and the facts concerning their payments of taxes are much more generally known than would be the case in a city occupying the same area. A number of tellers from various parts of the district supervised the voting. The voter was required to advance openly and deposit his vote in full view of the assemblage. In addition to all that the factional strife over the very existence of the consolidated district for about ten years had doubtless drawn the lines sharply and familiarized the members of each faction with various members of the other faction, and voters not qualified would likely have met with a challenge when they proposed to vote.

It is to be deplored that considerable feeling and factional differences appear to have been aroused in the consolidated district and possibly to have controlled the result of the meeting. Those matters are truly most unfortunate and tend to cripple seriously the cause of education. But they are not matters which affect the merits of this case in any way. They concern only the parties and those living in the consolidated district. The question of who is right and who is wrong has no bearing in the decision of the case before us. Right or wrong, two-thirds of the resident voters and taxpayers of any consolidated school district have the unquestioned power, under due and orderly statutory procedure, to disorganize such district. Charges of force and fraud made by relators against respondents in the pleadings find no sup-

port in the proof offered. Two-thirds of the resident voters and taxpayers of the district have spoken for disorganization. It becomes the duty of this court to hold that the will of such majority, as thus expressed, must prevail.

The consolidated school district having been legally disorganized in accordance with the provisions of the statute, it follows that the common school districts Faubian No. 51, Big Shoal No. 65 (63) and Englewood No. 64 must be held to have been legally organized thereafter and that respondents are the legal directors of the districts for which they have been respectively elected. Our temporary injunction is therefore dissolved and our writ of ouster denied. *Graves, C. J., James T. Blair, Walker* and *Ragland, JJ.,* concur; *White, J.,* absent; *Woodson, J.,* dissents in a separate opinion.

WOODSON, J. (dissenting).—I dissent from the majority opinion. This is an original proceeding in *quo warranto* instituted in this court by the Attorney General at the relation of certain citizens of Clay County, Missouri, against the respondents, alleging that they are illegally and unlawfully exercising the rights, duties, privileges and prerogatives of directors of three certain common school districts in said county.

The information in substance charges the respondents are illegally and unlawfully exercising the right, liberties, privileges and franchises of the districts of Faubian, Big Shoal and Englewood, of which they claim to be duly elected, qualified and acting directors, but in fact, said three common school districts have no legal existence whatever, but are included in and constitute parts of said Consolidated School District No. 1, of Clay County, Missouri.

The respondents in their several returns admit the legal existence of said Consolidated School District No. 1 prior to May 3, 1923, but aver that on said day said district was dissolved by an election duly called and

held in and by the duly qualified voters of said district, as provided by Section 11242, Revised Statutes 1919; that subsequent to that date, parts of the territory theretofore composing said consolidated district were organized into the three common school districts before mentioned, of which respondents allege they were and are duly elected, qualified and acting directors.

These allegations were put in issue by the reply, and this court appointed the Hon. Nick Cave of the Fulton Bar to take the evidence and report the same to this court, which he has faithfully done, covering 435 typewritten pages.

It is admitted that said dissolution election was duly called for May 3, 1923, for the purpose of voting upon a proposition to dissolve the consolidated district. It was also admitted that if the proposition to dissolve the consolidated district was duly carried at the election as required by said statute, then the aforesaid common school districts were and are legally organized common school districts, and in that event respondents are the duly elected, qualified and acting directors thereof.

In other words, it seems to be at least practically conceded on both sides that if said consolidated district was not dissolved by the election held on May 3, 1923, then the respondents should be ousted from office, but if the consolidated district was dissolved at said election, then the information filed by the Attorney-General should be denied.

The respondents introduced the certificate of the result of the dissolution election held on May 3, 1923, in which it is certified that 394 resident taxpayers voted in favor of the dissolution, which was more than two-thirds of the qualified resident taxpayers of the consolidated district, which was then and there filed with the Clerk of the County Court of Clay County, but the record nowhere shows that said certificate was filed with the secretary of the board of consolidated district, or with any member of the board thereof.

The relators also introduced evidence tending to show that no such report was served upon the chairman of the board of directors of the consolidated district, its secretary, or upon any member of the board thereof.

The facts upon which the certificate of the result of the election of May 3, 1923, were based, the record discloses the following (I include some of the comments or conclusions of counsel made in connection with the testimony because they shed light upon the testimony actually given):

C. L. Story testified that he was chairman of the dissolution meeting, that as such chairman he appointed M. P. Doege, Floyd Rule, John Filger, William Millsap, Mrs. Leva Tillery and L. McCullouch as tellers or assistants in the conduct of the election, and that A. O. Billings was elected secretary of the meeting. The six assistants were appointed by the witness Story. He stated, emphasizing his answer by repetition, that he appointed these six people to act as tellers, judges and clerks, appointing only those known to be in favor of the dissolution. He testified that he appointed two to write down the poll lists, that is to make a record of the voters; that Mr. Doege was appointed to give out the ballots to voters and that Mrs. Tillery and Mr. Millsap and Mr. Filger were to count the ballots. One Mr. Ragan testified that he assisted in giving out the ballots. Witness Story testified that he gave no directions as to preserving the poll lists or the tally sheets or ballots, and that he did not know what became of any of them.

"Q. And did you ask them about their qualifications as they came through and asked for ballots? A. I didn't ask them anything.

"Q. The ballots were given them and you didn't ask any questions, and no questions were asked so far as you know? A. No, sir; no sir.

"Q. So you didn't know the voters were all qualified taxpayers and voters there did you? A. I did not—no sir."

A. O. Billings, the Secretary of the meeting was asked as follows:

"Q. What did you do as secretary of the meeting to determine whether the people voting were qualified voters? A. Well I saw most of the people that passed in through the line and while I am not personally acquainted with all in the district, I know a goodly number of them.

"Q. But you made no inquiry outside of your own knowledge of them? A. No, I did not.

"Q. And of course all those you knew you did not know whether they were taxpayers or not did you? A. Not every one."

Mr. Doege and Mr. Ragan both gave out ballots, and testified that they distributed all of the ballots, that they made no inquiry of any voter as to whether he lived in the district, as to whether he paid any taxes, as to his age, or as to any qualifications whatever, but gave ballots to all who asked without any inquiry. Ray Wilson testified that he was also appointed by C. L. Story to assist, and that he was deposit clerk, that is, that he deposited the ballots in the box; that he took from the voters and deposited all ballots. The following questions were asked witness Wilson:

"Q. Before taking the voter's ballot and thrusting it in the box, what did you ask him as to his qualifications? A. Nothing.

"Q. Asked no questions at all? A. No questions whatever.

"Q. You didn't know whether they lived in the district of course? A. I knew a great many of them.

"Q. You asked no questions? A. I did not.

"Q. Of those you knew you didn't know who were taxpayers? A. I presumed they were, I didn't know."

Mrs. Tillery, one of the clerks appointed to keep a list of the voters, testified that she and Mr. McCullouch each made a list of the voters. The witness, Mrs. Tillery, testified that she did not give the list to any-

body; that she didn't keep it; that she had never seen it since the day of the election, and that she had no responsibility in the meeting except to record the names; that she didn't count them as she put them down; that the names were not compared with the ballots, and that she paid no attention to the counting, but that she stayed in the building, and in the room until the counting was over, and that she did not check her list nor count it when the result was announced.

Mr. McCullouch testified that he also made a list of the voters, but was uncertain whether he wrote their names before they got to the ballot box or afterwards; that he left his poll list on the table, and that he had not seen it since the day of election, nor heard anything about it. Floyd Rule testified that he was appointed to help count the ballots, that he and John Filger kept tally, and that he left the tally sheet there, that he did no know what became of it, that he had made no inquiry about it from that date, and that he had never seen it since, and that Mrs. Tillery and Mr. Millsap called off the ballots while he and Mr. Filger kept tally. Witness further testified that the counters did not have, while counting the ballots, the lists of voters made by the recording clerks, and that the ballots were not checked against the list of names made by the recording clerks. Witness Rule testified that they told Chairman Story the result, and that the only announcement that witness heard was their own statement and announcement to the chairman. In this connection, W. T. Thornberry testified that immediately after the election he went into the room where the election was held and looked around to see what might be found, and that he saw no papers of any kind, tally sheets or anything else.

The foregoing evidence being undisputed and showing that no voter was asked any question touching his qualificatoins by the chairman, by the secretary or by the election officers, and no such officials, being able, according to their testimony, to know who all of the

resident voters and taxpayers were, it would necessarily follow that the certificate as to the affirmative voting of 394 resident taxpayers, was at best a guess. This makes necessary an examination of the evidence as to how many taxpayers were in the district, and as far as possible who they were.

The relators offered 189 witnesses who testified as to their constitutional qualifications as voters, but who did not vote. Of this number 151 were shown by the tax records of the county collector to have been taxpayers in either 1923 or 1922, or both. One hundred and fifty-one are identified in this record absolutely as taxpayers. On the other hand respondents produced only 273 who voted. Of this number 245 were shown in the same manner by the tax records to be taxpayers. Of the voters produced on the stand by the respondents, two were shown not to have constitutional qualifications of voters. Joe Kiechle and Mrs. Kiechle were shown not to have been naturalized, and witness Martha Gragg, though a taxpayer, shows that her residence qualification was lacking.

Based upon the foregoing facts as set out herein before the whole controversy is narrowed down to the question as to whether the alleged dissolution election complies with the requirements of Section 11242, Revised Statutes 1919; that statute in addition to the ordinary constitutional qualifications requires that the voters be resident taxpayers.

The record discloses without contradiction, by the testimony of G. L. Story, chairman, and A. O. Billings, secretary, of the meeting, the two persons who certified the result of the election, as well as the six or eight people appointed as judges and tellers to assist them, that no attempt was made to qualify any voter by asking a single question.

There was a method available to these respondents and particularly to the officers and judges and clerks of that election, by which these matters might have been made certain. That would have been by the simple

method of preserving and presenting in this hearing, the list of voters, which their evidence shows was made at the time of the election.

This hearing was had less than one year after the election, and in a country district, only five miles square, where people keep track of one another, and although respondents had ample time to investigate these matters, and this cause has been at issue since September, 1923, yet they found only 273 persons who voted at that election.

The tax collector's record also discloses the fact that of the 273 voters who were present and testified, or whose friends testified for them, only 245 were taxpayers. A man and wife who were citizens of a foreign country voted; a woman who had lived in the district for two years, but came to the district to visit her son only a few days before the election, voted.

The loss of the record of the votes cast made it necessary for the relators to bring in all individual voters that could be found on either side and that their qualifications as taxpayers be tested by the collector's books.

Counsel for respondents introduced evidence tending to prove that said dissolution meeting of May 3, 1923, was duly called for the purpose of voting on a proposition to dissolve the consolidated district, and that it was called within the time, in the manner and by the persons designated by statute. It was admitted by relators that if the proposition to dissolve the consolidated district duly carried at that meeting as required by statute, then the aforesaid common school districts were and are legally organized common school districts, and respondents are the duly elected, qualified and acting directors of said common school districts.

The evidence shows that the meeting convened at the school house in the consolidated district about two o'clock in the afternoon of said date; that it was called to order by the president of the board of education of the district,

from a platform in front of the building; that more people
were present than could get into the school house; that
the meeting was organized by the election of G. L. Story
as chairman, and A. O. Billings as secretary; that relators
herein, and others opposed to the dissolution of the dis-
trict, were present at the meeting in large numbers; and
that they attempted to elect a chairman, were outvoted,
and refused to take any further part in the meeting, but,
for the most part, remained on the grounds until its close.
The actual voting on the question of dissolution of the
district was by ballot and in one of the rooms of the school
building through which the voters passed and deposited
their ballots. By consent of the meeting, several persons
from different parts of the district were appointed by the
chairman as tellers and to assist in distributing, receiving
and counting the ballots. The meeting continued in ses-
sion about three hours, during which time voters were
coming and going all the time and the actual voting was
in progress from the opening of the meeting until its
close. These officers of the meeting, from different parts
of the district, were personally acquainted with practically
all of the voters of the district. All ballots voted were
received from the individual voters by Ray Wilson, ap-
pointed by Chairman Story for that purpose. No other
person put any ballots in the ballot box, and no more than
one ticket was deposited by any voter. After all qualified
persons desiring to do so, had voted, the ballots cast by
the voters were duly counted and cast up by the officers
of the meeting. The certificate of election showed that
three hundred and ninety-four votes were cast for dis-
solving the district, and three votes were cast against it.
Immediately after the counting of the ballots was com-
pleted, the result of the voting was publicly announced,
and thereupon, on motion duly made and carried, the
meeting adjourned.

The secretary of the meeting kept a record of the
proceedings and result of the meeting, and these minutes,
attested by the chairman, were introduced in evidence by

relators. An affidavit of the chairman and secretary, respectively, showing the result thereof, was filed in the office of the clerk of the county court for his information. Both the minutes of the meeting and the above mentioned affidavit show that at the meeting three hundred and ninety-four votes were cast for dissolution of the district, and three votes were cast against it. They also state that more than two-thirds of the qualified voters and resident taxpayers of the district voted in favor of dissolving the district. The ballots voted at the meeting, still intact and without having been tampered with in any way, were produced at the hearing before the special commissioner, by the County Superintendent of Schools of Clay County, in whose custody they have been at all times since immediately following said meeting. The witness counted these ballots while on the witness stand and found the result to be as shown by the minutes of the secretary of the meeting. The special commissioner herein also counted the ballots and verified the numbers shown.

At the taking of testimony before the special commissioner, relators assumed the burden of proof. Their information, among other things, attacks the conduct and returns of the dissolution meeting as being fraudulent. At the hearing they attempted to produce a sufficient number of qualified voters and resident taxpayers of the district on May 3, 1923, but who did not vote at the dissolution meeting, to overcome the prima-facie case made for respondents by the minutes of the dissolution meeting taken in connection with the aforesaid admissions of relators.

Relators produced in evidence 189 persons who testified to their constitutional qualifications as voters in said consolidated school district May 3, 1923, but who testified that they did not vote in said meeting.

Relators' evidence of the taxpaying qualifications of their witnesses appears first from relators' "Exhibit 7," which is a so-called supplemental tax book, the nature and authenticity of which does not appear; second, from re-

lators' "Exhibit 6," which is a list of names compiled by the Collector of the Revenue of Clay County, Missouri, from the tax books as of June 1, 1923; and third, from the so-called Blevins list, which is a list of over 400 persons testified to by relators' witness Blevins, as being persons who to his personal knowledge were qualified voters of the district at the time of the dissolution meeting.

Respondents produced in evidence 275 qualified persons who testified that they voted at the meeting. Of the witnesses produced by respondents and who testified to their constitutional qualifications as voters in the consolidated district at the time of the dissolution election, 258 are shown by respondents' "Exhibit R" to have been taxpayers at the time of the dissolution meeting, and to have actually paid taxes in the year 1922 or 1923, or both, In addition to that, respondents showed that a number of their witnesses had paid taxes elsewhere in the State for the proper years, who were then qualified voters in said district, and whose names for some reason or other were not shown on the tax books as residents of the consolidated district at the time of the dissolution meeting, but were in fact taxpayers at the time of the dissolution meeting.

The record shows the following facts:

Under relators' theory of this case, their admissions aforesaid remove all questions from the case except the single question of the result of the voting at said dissolution meeting; relators' evidence shows the total number of taxpayers in the district, as shown by the tax records for the year 1922, to have been 468, while the allegation in their information states the total number of qualified voters and resident taxpayers in the district at the date of the dissolution election to have been 530; relators, as a part of their case, introduced in evidence the minutes of the dissolution meeting, duly certified by the secretary and chairman thereof, and which showed that, at said meeting, 394 persons voted against it; respondents introduced in evidence the original ballots voted at the dissolution meeting, and these ballots, still intact, and as counted by wit-

ness Black, County Superintendent of Schools for Clay County, and by the commissioner herein, showed the result of the dissolution meeting to be exactly as shown by relators in the minutes of the meeting; respondents also introduced in evidence 263 persons who were shown to have been qualified voters and resident taxpayers of the consolidated district at the time of the dissolution meeting, and who voted at the dissolution meeting.

I.   The material parts of Section 11242, Revised Statutes 1919, governing the election of dissolution of the district in question is:   "If two-thirds of the resident voters and taxpayers of such school district shall vote to dissolve any such   .   .   .   school district, then from and after that date the   .   .   .   said consolidated school district shall be dissolved."

It will be observed that the language of this statute is that if two-thirds of the resident voters and taxpayers of the district should vote for the dissolution, then from the date of such election the district shall be dissolved.

This statute does not simply require a two-thirds vote of the resident voters and taxpayers of the district voting at the election to dissolve the district, but two-thirds of all the resident voters and taxpayers thereof to so vote in favor of the dissolution, before it can be dissolved.   This has been the uniform ruling of this court construing similar statutes and constitutional provisions.

In the case of State ex rel. Woodson v. Brassfield, 67 Mo. 331, this court held that mere inaction of the voters by failing to vote did not express assent within the meaning of the statute.

In the case of State ex rel. v. Kansas City, 233 Mo. 162, l. c. 188, this court in passing upon the same question said:   "The language of the constitutional provisions and statutes falling within the first class named, ever since the case of State ex rel. v. Sutterfield, 54 Mo. 391, has uniformly been held by this court to mean that the proposition submitted must be accepted or approved by

the prescribed proportion of the qualified voters of the county or other subdivision to which the question is submitted, and not merely by such proportion of those who vote at the election.''

The same rulings were made in the following cases: Webb v. Lafayette Co., 67 Mo. 353; State ex rel. v. Walker, 85 Mo. 41; State ex rel. v. Francis, 95 Mo. 44; State ex rel. v. Harris, 96 Mo. 29; Russie v. Brazzell, 128 Mo. 93; State ex rel. v. White, 162 Mo. 533; State ex rel. v. Gibson, 195 Mo. 251; State ex inf. v. Russell, 197 Mo. 633; School Dist. v. Oellien, 209 Mo. 464.

II   This brings us to the consideration of the question as to whether or not the proposition to dissolve the district was carried by two-thirds of the resident voters and taxpayers of the district in the election held May 3, 1923?

In my opinion the certificate of that election made and filed by Mr. Story as chairman of the meeting and Mr. Billings as secretary, thereof, with the Clerk of the County Court of Clay County, made out a prima-facie case in favor of the respondents, and in the absence of all other evidence the court should find that the proposition of dissolution was duly adopted, but unfortunately for respondents that was not all the evidence the record shows was introduced.

The record discloses that not a voter who voted at that election was a resident voter of the district and a taxpayer thereof, unless we must presume that they were qualified voters from the mere fact that they voted at the election, and that most of the election officers were acquainted with most of the voters.   That presumption might be correctly predicated upon the presumption that no one would be presumed to vote illegally, but voted legally, were it not for the well known rule of evidence that prevents one presumption from being predicated upon another.   But waiving that objection, can we presume all the persons who voted for the dissolution of the district were resident voters thereof, and in addition thereto,

were taxpayers thereof, especially where all the evidence introduced shows that that question was not considered or taken into consideration.

The mere fact that a person is a resident of the State, county or district, is no evidence whatever that he or she is a taxpayer thereof; in fact, we know that there are many thousands of such residents who are not taxpayers, and for that reason I apprehend the statute requires the voters to be taxpayers thereof. Otherwise, why should the statute require them to be taxpayers if they vote whether they are taxpayers or not? While the law might be satisfied with slight evidence that the voter was a tax-payer, yet there is not a scintilla of evidence preserved in this record that even tends to show any of the voters were taxpayers of the district. In fact, the record shows that the tax-paying obligation of the voters was not thought of or considered at the election. The evidence affirmatively shows that a few of the voters were not only non-tax-paying persons of the district, but were in fact non-residents thereof.

III. Independent of the certificate of election filed by the chairman and secretary of the meeting with the Clerk of the County Court of Clay County before mentioned, there is no evidence showing that there were *more* that 273 resident tax-paying voters of the district who voted for the dissolution of the district, while the evidence shows that there were 189 resident tax-paying voters of the district who did not vote either for or against the proposition to dissolve the district. According to this evidence there were only 462 qualified voters of the district, two-thirds of which is 308, who were required to vote for the proposition in order to carry the proposition and dissolve the district. But the proposition did not receive, as previously stated, that number of votes, but only 278, lacking twenty-nine votes to make the necessary two-thirds majority in favor of the dissolution.

I am therefore of the opinion that the writ should issue.